645 S.E.2d 424

**Jimmy HILL, Respondent,**

v.

**EAGLE MOTOR LINES, Employer and Alabama Truckers Association c/o Attenta, Carrier, Appellants.**

No. 26330.

Supreme Court of South Carolina.

Heard Nov. 15, 2006.

Decided May 21, 2007.

Rehearing Denied June 6, 2006.

424

R. Mark Davis and William Thomas Bacon, IV, both of McAngus, Goudelock & Courie, of Charleston, for Appellants.

Steve Wukela, Jr., of Wukela Law Firm, of Florence, for Respondent.

Chief Justice TOAL:

In this workers' compensation case, Eagle Motor Lines and Alabama Truckers Association c/o Attenta (collectively, "Appellants") argue that the South Carolina Workers' Compensa-

tion Commission did not have jurisdiction over the claim of Jimmy Hill ("Respondent"), and that Respondent's injuries are not compensable under the South Carolina Workers' Compensation Act. We affirm in part and reverse in part, holding that the South Carolina Workers' Compensation Commission had jurisdiction over Respondent's claim and that Respondent suffered compensable injuries.

### FACTUAL/PROCEDURAL BACKGROUND

Respondent, a resident of South Carolina, completed an application for employment as a truck driver with Appellant Eagle Motor Lines ("Employer"). Thereafter, Employer's recruiting manager telephoned Respondent at his home in South Carolina and requested Respondent travel to Employer's headquarters in Alabama to complete an employee screening process. Respondent traveled to Alabama where he completed a drug screening test, a driving test, and other orientation procedures before being assigned a truck. During the course of his employment, Respondent's driving route traversed several states along the east coast.

In 2001, Respondent suffered a brain injury and a broken rib when his truck overturned while driving through Virginia. As a result, Respondent is disabled and unable to return to work as a truck driver. Respondent claimed entitlement to medical and compensation benefits. Appellants initially paid Respondent's medical bills and disability benefits, but terminated benefits after Respondent suffered a stroke allegedly caused by a confrontation with a nurse who was handling Respondent's workers' compensation case.

Respondent filed a Form 50 and Appellants denied Respondent's claim. Following a hearing before the South Carolina Workers' Compensation Commission ("Commission"), the single commissioner found the Commission had jurisdiction over Respondent's claim because: (1) Respondent was hired in South Carolina during a telephone conversation with Employer's recruiter; (2) Employer was not exempt from the South Carolina Workers' Compensation Act because it had four or more employees in South Carolina; and (3) Employer subjected itself to the Workers' Compensation Act by filing for workers' compensation coverage in South Carolina. The commissioner also found Respondent suffered compensable inju-

ries and ordered Appellants to continue providing benefits to Respondent.

On appeal, the Commission's appellate panel affirmed the decision of the single commissioner. On appeal to the circuit court, the court affirmed the appellate panel on all grounds of appeal except the issue of jurisdiction, which the court remanded to the Commission for reconsideration.

This case was certified to this Court from the court of appeals pursuant to Rule 204(b), SCACR. Appellants raise the following issues for review:

I. Did the circuit err in failing to decide whether the Commission had jurisdiction over Respondent's workers' compensation claim?

II. Did the circuit err in failing to find that the Commission did not have jurisdiction over Respondent's claim because Respondent was not hired in South Carolina?

III. Did the circuit court err in failing to find that the Commission did not have jurisdiction over Respondent's claim because Employer did not have four or more employees in South Carolina?

IV. Did the circuit court err in affirming the Commission's findings that Respondent's physical brain injury, stroke, and psychological illness were compensable?

### STANDARD OF REVIEW

■ The Administrative Procedures Act (APA), S.C.Code Ann. § 1–23–310 *et. seq.* (2005 & Supp.2006), governs appellate review of a final decision from an administrative agency. *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). Under the APA, this Court must determine whether the findings of fact of the Commission's appellate panel are supported by substantial evidence in the record and whether the panel's decision is affected by an error of law. S.C.Code Ann. § 1–23–380(A)(5) (Supp.2006); *Baxter v. Martin Bros., Inc.,* 368 S.C. 510, 513, 630 S.E.2d 42, 43 (2006).

■ When the jurisdiction of the Commission is at issue, the reviewing court is not bound by the Commission's findings of fact upon which jurisdiction is dependent. *Gray v. Club Group, Ltd.,* 339 S.C. 173, 181, 528 S.E.2d 435, 439 (Ct.App.

2000). If the factual issue before the Commission's appellate panel involved a jurisdictional question, this Court's review is governed by the preponderance of the evidence standard. *Id.* "In determining jurisdictional questions, doubts of jurisdiction will be resolved in favor of inclusion of employees within workers' compensation coverage rather than exclusion." *Wilson v. Georgetown County,* 316 S.C. 92, 94, 447 S.E.2d 841, 842 (1994).

## LAW/ANALYSIS

### I. The circuit court's remand of the jurisdictional issue.

Appellants argue the circuit court erred in failing to rule on whether the South Carolina Workers' Compensation Commission had jurisdiction over Respondent's workers' compensation claim. We agree.

The circuit court has both the power and duty to review the entire record in order to find the jurisdictional facts without regard to the conclusion of the Commission on the issue of jurisdiction. *White v. J.T. Strahan Co.,* 244 S.C. 120, 125, 135 S.E.2d 720, 723 (1964). Accordingly, the court must decide the jurisdictional question in accord with the preponderance of the evidence, bearing in mind that the basic purpose of the Workers' Compensation Act is to include, rather than exclude, employers and employees within its coverage. *Id.* Here, the geographical facts and circumstances of Respondent's hiring and employment were determinative of whether the Commission had jurisdiction over Respondent's claim. Therefore, the circuit court had the power and duty to decide the jurisdictional issue and erred by remanding the issue to the Commission for reconsideration.

### II. Jurisdiction in the state where an employee is hired

Appellants argue that the South Carolina Workers' Compensation Commission did not have jurisdiction over Respondent's claim because Respondent was neither hired nor employed in South Carolina. We disagree.

An employee covered by the provisions of the South Carolina Workers' Compensation Act is authorized to file his claim under the laws of the state where he is hired, the state where

he is injured, or the state where his employment is located. S.C.Code Ann. § 42-15-10 (1976). The parties' central dispute concerns where Respondent was hired.

The employer-employee relationship is the jurisdictional foundation upon which workers' compensation is awarded; the existence of a contract, not the commencement of work, establishes the employer-employee relationship. *O'Briant v. Daniel Constr. Co.*, 279 S.C. 254, 256, 305 S.E.2d 241, 243 (1983). Accordingly, the situs of the contract determines where an employee was hired for purposes of determining jurisdiction under § 42-15-10. *Moore v. N. Amer. Van Lines*, 310 S.C. 236, 238-39, 423 S.E.2d 116, 118 (1992). The place of contracting is where the minds of the parties meet or the place where the final act occurred which made a binding contract. *Id.* Where acceptance is given over the telephone, "the place of contracting is where the acceptor speaks his acceptance." *O'Briant*, 279 S.C. at 256, 305 S.E.2d at 243.

The single commissioner relied on *O'Briant v. Daniel Construction Co.* in finding that Respondent was hired in South Carolina. In *O'Briant*, the employee, a construction worker, initially filled out an employment application with a construction company at its Georgia office. The employee was not offered a job at the time, but the construction company later contacted him by telephone at his home in South Carolina offering him employment on a construction site in Georgia. The employee accepted the job offer over the telephone. 279 S.C. at 255-56, 305 S.E.2d at 242. The Court found that although the employee signed his application and enrollment card in the Georgia office, was hired to work at a job site in Georgia, was paid in Georgia, and received his fatal injuries in Georgia, the final act which created a binding contract occurred when the employee verbally accepted the job over the telephone in South Carolina. *Id.* at 256, 305 S.E.2d at 243. Therefore, the Court held that the employee was hired in South .Carolina and the Commission had jurisdiction under § 42-15-10.

We find the present case to be indistinguishable from *O'Briant.* Pursuant to another employee's recommendation,[1]

---

1. This employee received a $500 referral bonus from Employer for recruiting Respondent.

Respondent called Employer at its office in Alabama and spoke with the recruiting manager about being hired as a driver. The recruiting manager mailed Respondent an employment application to his home in South Carolina, which Respondent filled out and returned to Employer's office in Alabama. After filling out the application and sending it in, Respondent received a telephone call from the recruiting manager a few months later informing Respondent that his application had been approved and that Employer had a position open for him. The recruiting manager informed Respondent that he needed to travel to Alabama for drug screening and a road test; to attend orientation; and to receive his truck assignment. Employer promised to provide, and in fact did provide, Respondent's travel and lodging expenses for this trip. Once in Alabama, and after drug screening and a road test, the recruiting manager certified Respondent for driving and gave Respondent his first assignment and a $150 advance for road expenses. Respondent left Alabama with a truck and headed towards his first delivery destination.

Appellants argue that the purpose of the phone interview and employment application was to pre-screen potential employees before bringing them to Alabama for the last steps of the hiring process. We find this argument to be unpersuasive. Based on the facts, we agree with the Commission that any drug tests, road tests, and paperwork completed by Respondent in Alabama were simply incidental to the hiring of Respondent.[2] Clearly a meeting of the minds had to occur *before* Respondent traveled to Alabama to meet Employer, and *before* Employer promised to finance such a trip. We therefore find that Employer hired Respondent during the telephone conversation in which Employer notified Respon-

---

**2.** Employer argues that Respondent could not have been hired over the phone because the Department of Transportation (DOT) prohibits hiring truck drivers before the administration of a drug test. This argument is misapplied. Although the federal government requires a person seeking to drive a commercial vehicle to pass a drug test and a road test before *driving* a commercial vehicle, there is no obligation on an employer to perform these tests before *hiring* a truck driver employee. 49 C.F.R. § 391.41 (2006). *See also* 49 C.F.R. § 382.301(a) (requiring that drug testing be done "prior to the first time a driver performs safety-sensitive functions for an employer").

dent that there was a job opening for him and arranged for Respondent to travel to Alabama and commence work. Accordingly, the situs of the contract was in South Carolina and the Commission has jurisdiction over Respondent's claim.

 Respondent finds additional support for the Commission's jurisdiction under § 42–15–10 because his place of employment was in South Carolina. In order to determine where a claimant's employment is located for purposes of § 42–15–10, South Carolina has adopted the "base of operations" rule. *Voss v. Ramco, Inc.*, 325 S.C. 560, 482 S.E.2d 582 (Ct.App. 1997) (citing *Holland v. W.C.A.B. (Pep Boys)*, 137 Pa.Cmwlth. 22, 586 A.2d 988 (1990)). Under the base of operations rule, "the worker's employment is located at the employer's place of business to which he reports, from which he receives his work assignments, and from which he starts his road trips, regardless of where the work is performed." *Holman v. Bulldog Trucking Co.*, 311 S.C. 341, 346, 428 S.E.2d 889, 892 (Ct.App. 1993).

Although transient employees such as Respondent do not always fit squarely within the base of operations test, we find that based on the specific facts and circumstances of this case, Respondent's employment was located in South Carolina. Respondent received his work assignment from dispatch at his South Carolina home; started his road trips from his home; used drop yards in South Carolina; kept his truck at his home on the weekends; and received his paycheck at his home in South Carolina. Although Respondent was required to call the Alabama office at the end of each delivery in order to find out where to pick up his next load, he was not required to report to the Alabama office for duty or return to Alabama after completing each assignment. Employer also did not require Respondent to maintain and wash the truck at the Alabama terminal. Additionally, Employer's trucks were not licensed in Alabama, but Oklahoma. *Cf. Holman*, 311 S.C. 341, 428 S.E.2d 889 (holding that an employee truck driver who lived in South Carolina was nevertheless employed in Georgia for purposes of jurisdiction under § 42–15–10 because Georgia is where he reported for duty each day; picked up and returned his company truck; received work assignments; reported to dispatch; was required to call in during the course

of work; maintained and washed his truck; filed trip logs; and received his paycheck).

Moreover, based on the testimony of Employer's officers, retaining drivers in states located throughout Employer's shipping areas benefited Employer in several ways. Primarily, it saved Employer money by reducing the number of miles required by drivers to complete jobs' and by decreasing the amount of "dead head" time due to the drivers' proximity to the pick-up locations of their cargo. Officers of Employer also testified that this system served to attract potential employees who would be enticed by the idea of spending weekends at home. In our opinion, and in keeping with general concepts of due process, Employer should not be permitted to retain the benefits of employing South Carolina residents in this capacity without submitting to jurisdiction under the South Carolina Workers' Compensation Act. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (stating that a court's exercise of jurisdiction requires some act by which a defendant purposefully avails himself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws).

Accordingly, we hold the Commission correctly exercised jurisdiction over Respondent's claim because Respondent was hired in South Carolina and his employment was located in South Carolina.

### III. Jurisdiction when an employer has four or more employees in South Carolina.

■ Appellants argue that even if Respondent was authorized to file his claims in South Carolina under § 42–15–10, Appellants are nevertheless exempt from the South Carolina Workers' Compensation Act because Employer did not have any employees in South Carolina. We disagree.

An employer is exempt from the South Carolina Workers' Compensation Act if the employer has less than four employees in this State. S.C.Code Ann. § 42–1–360(2) (1976).

There are numerous facts that lead this Court to conclude that Employer has at least four employees in South Carolina. First, Employer is required to file with the South Carolina Employment Security Commission when it employs South

Carolina drivers. According to Employment Security Commission reports, Employer had more than four employees in South Carolina during each fiscal quarter of 2001 and the first quarter of 2002. Employer also files income taxes with the South Carolina Department of Revenue for South Carolina employees. Additionally we note that Employer's out-of-state drivers are not permitted to exercise an election to file their income tax withholding or unemployment security benefits with the State of Alabama.

Employer claims that it has no employees in South Carolina because it has no offices, facilities, or office staff in South Carolina. Employer also argues that the South Carolina income tax and unemployment filings are merely formalities required by law. However, given that the crux of Employer's business requires the mobility of its employees, we will not, as Employer suggests, limit our interpretation of § 42–1–360(2) to traditional jurisdictional notions of a "principal place of business." *See Lester v. S.C. Workers' Comp. Comm'n*, 334 S.C. 557, 561, 514 S.E.2d 751, 752 (1999) ("Workers' compensation statutes are to be construed in favor of coverage; any exception to workers' compensation coverage must be narrowly construed.").

Under the facts and circumstances of this case, we find that Employer regularly employed more than four employees in the same business in South Carolina at the time of Respondent's accident. Accordingly, Employer is not exempt from jurisdiction under the Workers' Compensation Act.

### IV. Compensability of Respondent's injuries

■ Appellants argue that Respondent's injuries are not compensable under the South Carolina Workers' Compensation Act. We disagree.

Injuries are covered by the South Carolina Workers' Compensation Act when they arise out of and in the course of employment and when they naturally and unavoidably result from the accident in question. S.C.Code Ann. § 42–1–160 (1976). In our opinion, there is substantial evidence in the record to support the Commission's finding that Respondent sustained a brain injury and a stroke (transient ischemic attack), and developed a psychological condition stemming

from an accident arising out of and in the scope of his employment.

Following the accident, an emergency room CT scan indicated Respondent had a post-trauma subarachnoid hemorrhage [3] in the right parietal region of his brain. At a follow-up appointment the following day, a neurosurgeon assessed Respondent and noted a closed head injury with post-traumatic subarachnoid hemorrhage and probable post-concussive syndrome. During the following month, Respondent complained to the neurosurgeon of dizziness, vertigo, and light-headedness, at which point the doctor referred Respondent to neurologist Dr. R. Joseph Healy ("Dr.Healy") for a formal neurological evaluation. Dr. Healy also diagnosed Respondent as having a closed head injury with post-traumatic subarachnoid hemorrhaging and post-concussive syndrome. Although Respondent had no previous history of high blood pressure, the doctor also prescribed medication for treatment of hypertension. As Respondent continued under the care of Dr. Healy, he continued to complain of sleeplessness, numbness in his left hand, and hearing loss.

On Respondent's third visit, Dr. Healy overheard a confrontation between Respondent and his workers' compensation nurse about whether the nurse would remain in the examination room during Respondent's exam. When Dr. Healy entered the room to begin the exam, he observed that Respondent was very agitated and had extremely high blood pressure.[4] During the exam, Respondent's blood pressure remained at an elevated level. Respondent complained of a headache, dizziness, and left arm numbness; the doctor also noted high blood sugar. Concerned that Respondent's symptoms were related to his high blood pressure, Dr. Healy listed

---

3. Respondent's neurologist explained that subarachnoid hemorrhaging occurs when there is bleeding between the middle membrane covering of the brain and the brain itself.

4. Additionally, we note Dr. Healy's efforts to settle the matter between Respondent and the workers' compensation nurse. Although the nurse claimed a need to stay in the room during the doctor's visit in order to "gather information," Dr. Healy informed the nurse that by law, the patient had the right to see the doctor alone. Dr. Healy noted in his office records, "The Workman's Comp is very confrontational which I think is very inappropriate."

Respondent as suffering from a transient ischemic attack [5] and admitted him to the hospital that day.

Respondent continued under Dr. Healy's care and, with medication and modifications in his diet, Dr. Healy found that Respondent's conditions were improving. However, based on the poor results from Respondent's sleep study and Respondent's decreased ability to focus and perform tasks, Dr. Healy did not yet believe that Respondent was fit to return to work as a truck driver, and requested neuropsychological testing. The neuropsychological examination revealed that Respondent suffered from depression, mainly due to his head injury, and partly due to marital problems.

According to Dr. Healy, Respondent's underlying medical problems were exacerbated by Respondent's closed head injury and the confrontation with the workers' compensation nurse. Dr. Healy also explained that it was his opinion that the changes in Respondent's lifestyle resulting from his inability to work ultimately led to Respondent's depression.

Whether there is any causal connection between employment and an injury is a question of fact for the Commission. The Commission's decision must be affirmed if the factual findings are supported by substantial evidence in the record. *Sharpe v. Case Produce, Inc.*, 336 S.C. 154, 159–60, 519 S.E.2d 102, 105 (1999). Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the Commission reached. *Id.* at 160, 519 S.E.2d at 105. The possibility of drawing two inconsistent conclusions from the evidence does not prevent the Commission's finding from being supported by substantial evidence. *Id.*

Based on Respondent's medical records, the opinion of Respondent's treating neurosurgeon, and reports of Respondent's confrontation with the workers' compensation nurse, we find that there is substantial evidence in the record to support the Commission's conclusion that Respondent sustained a physical brain injury, stroke, and developed a psychological condition in conjunction with an accident arising out of and in

---

5. Respondent's neurologist described a transient ischemic attack as a condition indicating the patient has nearly had a stroke.

the scope of his employment. Accordingly, we affirm the circuit court's finding that Respondent's injuries are compensable under the South Carolina Workers' Compensation Act.

## CONCLUSION

For the foregoing reasons, we hold that the circuit court erred in failing to decide the issue of jurisdiction over Respondent's workers' compensation claim. Furthermore, we affirm the Commission's findings and hold that the Commission had jurisdiction over Respondent's workers' compensation claim. Finally, we affirm the decision of the circuit court finding that Respondent suffered compensable injuries under the South Carolina Workers' Compensation Act.

MOORE, WALLER, JJ., and Acting Justice G. THOMAS COOPER, concur. PLEICONES, J., concurring in part, dissenting in part in a separate opinion.

Justice PLEICONES:

I agree that the circuit court erred in failing to address the jurisdictional issue, but would hold there is no evidence that Respondent was hired in South Carolina. The drug testing, road testing, and orientation conducted in Alabama were not "simply incidental" to Respondent's hiring, but in fact the determinative acts. Had Respondent failed either test, or failed to complete orientation, he would not have been hired. In fact, he was not hired, until his successful completion of these tasks. Moreover, in determining whether the "base of operations" is in South Carolina, the focus is the employer's base, not the employee's. By focusing on the employee's residency, the majority ignores the legislative decision in adopting S.C.Code Ann. § 42–15–10 (1985) to reject the "domicile and employment" rule. *See Holman v. Bulldog Trucking Co.*, 311 S.C. 341, 346, 428 S.E.2d 889, 892 fn. 2 (Ct.App. 1993).

Accordingly, I would hold that South Carolina lacks jurisdiction over Respondent's workers' compensation claim.