750 S.E.2d 97

**Richard A. HARTZELL, Employee, Respondent,**

v.

**PALMETTO COLLISION, LLC, Employer, Appellant,**

and

**South Carolina Worker's Compensation Uninsured Employers Fund, Respondent.**

Appellate Case No. 2012–211870.

No. 5176.

Court of Appeals of South Carolina.

Heard Sept. 11, 2013.

Decided Oct. 9, 2013.

Rehearing Denied Nov. 14, 2013.

234

Kirsten Leslie Barr, Harold Eugene Trask, and David Alan Westerlund, Jr., all of Trask & Howell, LLC, of Mount Pleasant, for Appellant Palmetto Collision, LLC.

Kerry W. Koon, of Charleston, for Respondent Richard A. Hartzell.

Lisa C. Glover, of Columbia, for Respondent the South Carolina Workers' Compensation Uninsured Employers Fund.

PER CURIAM.

The Appellate Panel of the Workers' Compensation Commission (Appellate Panel) awarded Richard A. Hartzell (Claimant) medical care and treatment benefits for a back injury. Palmetto Collision, LLC, (Employer) appeals the award, arguing the Appellate Panel erred in (1) determining Employer regularly employed four or more employees and, therefore, was subject to the South Carolina Workers' Compensation Act (Act) [1]; (2) finding Claimant accidentally injured his back "on or about February 25, 2009," and failing to make any conclusion of law thereon; (3) finding Claimant reported the injury timely and failing to make any conclusion of law thereon; and (4) awarding Claimant medical benefits for the injury. We find jurisdiction was proper and reverse on the issue of notice.

## FACTS

On May 10, 2010, Claimant submitted a Form 50 claim for workers' compensation benefits, alleging he had injured his back at work on or about February 25, 2009. Employer filed a Form 51 denying Claimant's injury, the applicability of the Act to Employer, and receipt of any notice of Claimant's injury prior to the Form 50. The South Carolina Uninsured Employers' Fund (the Fund) filed its own Form 51, which echoed Employer's responses.

## I. Evidence Presented to the Single Commissioner

### A. Employment and Injury

On July 12, 2011, the parties presented their case to the single commissioner. Claimant testified he was fifty-two

---

1. S.C.Code Ann. §§ 42–1–10 to –19–50 (1985 & Supp.2012).

years old and had worked as an automobile body and paint technician for more than twenty-five years. In March 2009, Claimant worked primarily doing body work for Employer, a company solely owned and operated by Mike Stallings. Claimant had previously worked for the Stallings family in two of their other auto body shops. Although Claimant admitted he suffered from arthritis in his shoulders, he denied ever having chronic or significant lower back pain before this injury.

Claimant stated besides Stallings and himself, four other employees worked for Employer at the time of his injury: Doug Alexander (Doug), Jamie Alexander (Jamie), Harold Brock, and Jimmy Morris. Claimant did not know Employer's business arrangements with the other men. He recalled Morris was present at the shop daily. Jamie had left Employer previously and returned while Claimant worked there. According to Claimant, the other men had worked regularly for Employer.

Claimant recalled that, on or about February 25, 2009,[2] he began cleaning up the shop so he could access his tools more easily. According to Claimant, the clean-up required moving heavy equipment. Later that afternoon, Claimant began feeling pain in his lower back. He believed the pain was "part of the job" and would subside on its own. He did not report an injury that day.

The next day, Claimant's lower back pain had intensified so that he could hardly bend over, and "it just progressively got worse." He testified that on the day after he moved the heavy equipment, he "said something to [Stallings] that I was pretty sore, I must have hurt myself." Claimant recalled Stallings suggesting he should go to the emergency room if he were having problems. Despite experiencing back problems when bending, kneeling, squatting, and lifting, Claimant did not see a doctor and continued working for approximately two weeks after the injury. Although Claimant explained he and Stallings talked about the lower back pain during the last couple of weeks Claimant worked for Employer, nothing was done about it. Claimant stated he left Employer because

---

2. On cross-examination, Claimant conceded he could not remember exactly which day the injury occurred.

work had slowed down due to the economy and Employer had no work for him.

In June 2009, Claimant applied for unemployment compensation, which was ultimately awarded. In May 2010, he filed his Form 50. Late in 2010, Stallings contacted Claimant and asked him to remove some equipment he had stored in Employer's building. Claimant recalled three of his friends moved the equipment for him. Once again, he did not ask Stallings to provide him with medical treatment.

## B. Employer's Testimony and Records

Stallings testified he owned Employer as the sole member of a limited liability company. He explained that, during the third and fourth quarters of 2007 and at the time of the hearing, he had two employees. Doug, who was Stallings's uncle, worked full-time as a fireman on an Air Force base and worked part-time for Employer. Doug's son, Jamie, worked for Employer intermittently but on a full-time basis beginning in 2007. Brock worked for Employer throughout 2009 doing restoration work. Stallings conceded he occasionally called Morris to repair heavy frame damage but testified Morris received a Form 1099 for tax purposes. With regard to Claimant, Stallings explained he believed an employer "could legally pay an individual $600 ... [per] year tax free." Stallings testified that because of this belief, he paid Claimant directly when he began work at the end of 2008, even though Claimant's pay exceeded $600. He added Claimant to Employer's payroll at the beginning of 2009.

On cross-examination, Stallings conceded that during the first quarter of 2009, Doug worked for Employer part-time but regularly. In addition, Jamie, Brock, and Claimant worked for Employer during the first quarter of 2009. Stallings maintained Morris worked as-needed but not regularly; he "would hang around sometimes when he didn't have work to do." In summary, counsel and Stallings engaged in the following exchange:

Q. [F]or the second quarter of 2009 after [Claimant] left you still had the same three other guys that were reported during ... [the] first quarter of 2009, being Douglas Alexander, Harold Brock and James Alexander ... ?

. . . .

They were your guys during that period of time; is that correct?

A. Well technically it would have been James and Douglas because Harold, like I said, even though he was an employe[,] and I mean I have to say this because it's the truth, he was working on a—on side work in the shop, not on the main flow of cars and stuff.

Q. But it was [Employer's] work?

A. Absolutely.

With regard to the injury, Stallings denied being asked to pay for medical treatment for Claimant's lower back until he received Claimant's Form 50. He further denied having any recollection of Claimant notifying him of an injury or a need to go to the doctor.

Stallings testified that although an insurance agent suggested, quoted, and submitted an application for workers' compensation insurance in 2008, he neither signed the application nor approved or paid for the policy.[3] However, he testified he paid payroll taxes and reported to the state and federal governments the wages he paid his employees. An accountant who handled Employer's bookkeeping provided a letter stating (1) Employer never paid any company for workers' compensation insurance and (2) Employer had "no more than three full time employees" on its payroll.

Records obtained from the Employment Security Commission (ESC) reflect Employer reported two employees for the third and fourth quarters of 2007 and the first quarter of 2008. Employer reported five employees for the second quarter of 2008, four for the third quarter of 2008, three for the fourth quarter of 2008. It reported four employees for the first quarter of 2009, three for the second quarter of 2009, and five employees (including Stallings) for the third and fourth quarters of 2009.

---

3. As a result, the carrier issued an insurance policy but cancelled it for an unpaid premium after the first quarter of the term elapsed.

## II. Order and Appeal to the Appellate Panel

On September 8, 2011, the single commissioner issued an order finding Employer was subject to the Act because it regularly employed four or more employees at the time of the injury, and Claimant had suffered and timely reported to Employer an injury at work. The single commissioner ordered Employer and the Fund to provide an evaluation to determine whether Claimant had reached maximum medical improvement and whether he needed any additional medical treatment. Employer appealed to the Appellate Panel, asserting twenty-one separate errors.

On December 20, 2011, the Appellate Panel heard arguments. In a split decision, the Appellate Panel affirmed the single commissioner's award. The Appellate Panel identified numerous facts as significant. First, the Appellate Panel noted records from the ESC and testimony from Stallings indicated Employer had four regular employees at the time of the injury: Doug, Jamie, Brock, and Claimant. Moreover, an application for workers' compensation insurance was submitted on Employer's behalf on May 27, 2008, and, had Employer paid the premiums, its workers' compensation coverage would have expired May 27, 2009. The Appellate Panel noted Employer did not file a Form 38 to withdraw itself from the coverage of the Act.

Furthermore, the Appellate Panel found Claimant established his report to Employer of a work-related injury primarily through his own testimony, but he was able to continue working after the injury. The Appellate Panel noted that, in rebutting Claimant's evidence, Stallings testified he could not deny with certainty that Claimant had reported the injury, but the report did not "ring a bell." However: "On[ ] balance, the Claimant's testimony [wa]s more credible on the issue[s] of the fact, and reporting, of the injury." The Appellate Panel observed neither side contended Employer had provided Claimant with any medical care.

In view of these findings, the Appellate Panel affirmed the single commissioner's award of benefits, concluding the Act covered both parties at the time of Claimant's injury. This appeal followed.

## LAW/ANALYSIS

### I. JURISDICTION

Employer asserts the Appellate Panel erred in determining it regularly employed four or more employees and, therefore, was subject to the Act. We disagree.

 On appeal from the Appellate Panel, "an appellate court reviews jurisdictional issues by making its own findings of fact without regard to the findings and conclusions of the Appellate Panel." *Hernandez–Zuniga v. Tickle,* 374 S.C. 235, 244, 647 S.E.2d 691, 695 (Ct.App.2007). The appellant bears the burden of demonstrating by a preponderance of the evidence that jurisdiction is proper. *Id.* at 244, 647 S.E.2d at 696.

 The Act establishes, among other benefits, medical care and treatment for workers injured "by accident[s] arising out of and in the course of employment." S.C.Code Ann. §§ 42–1–160(A), –310 (Supp.2012). South Carolina courts follow a policy of liberally construing the Act in favor of coverage. *Schulknight v. City of N. Charleston,* 352 S.C. 175, 178, 574 S.E.2d 194, 195 (2002). However, the Act specifically exempts from coverage any employer "who has regularly employed in service [fewer] than four employees in the same business within the State." S.C.Code Ann. § 42–1–360(2) (Supp.2012). The General Assembly has broadly defined "employee" as "every person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written, ... whether lawfully or unlawfully employed, but exclud[ing] a person whose employment is both casual and not in the course of the trade, business, profession, or occupation of his employer." S.C.Code Ann. § 42–1–130 (Supp.2012).

In *Harding v. Plumley,* 329 S.C. 580, 586 n. 2, 496 S.E.2d 29, 32 n. 2 (Ct.App.1998), this court acknowledged:

Because South Carolina adopted large portions of the North Carolina Workers' Compensation legislation, we rely on North Carolina precedent in Workers' Compensation cases. Decisions of North Carolina courts interpreting that state's Workers' Compensation statute are entitled to weight when South Carolina courts interpret the South Carolina Work-

ers' Compensation Law because the South Carolina statute was fashioned after that of North Carolina.

(citations omitted). Thus, the *Harding* court looked to North Carolina precedent for guidance in evaluating the number of persons a business "regularly employed." 329 S.C. at 585–86, 496 S.E.2d at 32. The North Carolina court reasoned:

> [T]he term 'regularly employed' connotes employment of the same number of persons throughout the period with some constancy. It would not seem that the purpose of the Act would be accomplished by making it applicable to an employer who may have had, in the total number of persons entering and leaving his service during the period, more than the minimum number required by the Act.

*Patterson v. L.M. Parker & Co.,* 2 N.C.App. 43, 48–49, 162 S.E.2d 571, 575 (1968). Moreover, this court has found:

> In the context of construing the statute, the term "regular" is often juxtaposed with the term "casual." 4 Larson, *Workers' Compensation* §§ 74.01–02 ("It has been said that the two concepts are the same . . . in the casual employment definition, both duration and regularity of recurrence are important factors."). Where employment cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual. Employment is casual when not permanent or periodically regular but occasional or by chance and not in the usual course of the employers trade or business.

*Hernandez–Zuniga,* 374 S.C. at 248, 647 S.E.2d at 697–98 (some citations and quotation marks omitted). In its reasoning, this court recognized that although employees "worked irregular days and hours, their employment extended over a period of some four weeks, during which they worked, not by chance or for a particular occasion, but according to a definite employment at hourly wages which were paid at the end of each week worked." *Id.* at 250, 647 S.E.2d at 699, quoting *Durham v. McLamb,* 59 N.C.App. 165, 171, 296 S.E.2d 3, 7 (1982).

## A. Test for Regularity of Employment

■ Our prior examinations of related issues, relying upon North Carolina law, have highlighted several common charac-

teristics of regular employment under the Act: (1) "employment of the same number of persons," although not necessarily the same individuals; (2) during the relevant period of time; (3) "with some constancy"; (4) "not by chance or for a particular occasion"; and (5) without regard to the regularity of the days or hours worked. *Harding*, 329 S.C. at 585–86, 496 S.E.2d at 32; *Hernandez–Zuniga*, 374 S.C. at 249–50, 647 S.E.2d at 698–99; *Patterson*, 2 N.C.App. at 48–49, 162 S.E.2d at 575; *Durham*, 59 N.C.App. at 171, 296 S.E.2d at 7. We clarify that the first characteristic, "employment of the same number of persons," establishes a minimum number of employees, depending upon the facts at hand. This language does not preclude a finding of regularity if, at some point during the relevant time period, an employer employs more than "the same number" of persons.[4]

In addition, each characteristic may require a complex analysis, depending upon the available evidence. For example, the *Hernandez–Zuniga* court examined the concept of a "relevant time period" in some depth and noted the identification of such a time period "is particularly difficult for employment in which workers come and go due to the nature and type of work they perform." 374 S.C. at 249, 647 S.E.2d at 698. However, it recognized "the employer's established mode or plan of operation dictates, to a large extent, the relevant time period, and both duration and regularity of occurrence are important factors." *Id.* Thus, the "relevant time period" turns on the facts of each case. *See, e.g., Harding*, 329 S.C. at 586–87 n. 3, 496 S.E.2d at 32–33 n. 3 (using the time period from "July through November" and noting the Appellate Panel had found that time period to be "critical" and neither party challenged that finding on appeal); *Grouse v. DRB Baseball Mgmt., Inc.*, 121 N.C.App. 376, 378–80, 465 S.E.2d 568, 570–71 (1996) (examining one-year period to determine number of regular employees, where employer admitted to hiring additional seasonal employees from April to August).

---

4. If read literally, the existing description could improperly exclude from the Act employers whose payroll consistently reflected four or more regular employees but fluctuated upward.

## B. Analysis

■ The preponderance of the evidence, viewed in light of these five characteristics, supports a finding Employer regularly employed at least four persons, and thus, the Appellate Panel had jurisdiction over this claim. As a threshold matter, we note neither the single commissioner nor the Appellate Panel identified the time period relevant to Claimant's injury. The record contains evidence concerning Employer's employees from 2007 to 2009, subdivided into quarters annually. In view of this evidence and Claimant's assertion his injury occurred on February 25, 2009, we find the relevant time period for his claim is the first quarter of 2009, up to the date of Claimant's injury.

Accordingly, we must determine whether Employer (1) employed the same number of persons, although not necessarily the same individuals, (2) during the first quarter of 2009, (3) with some constancy, (4) not by chance or for a particular occasion, and (5) without regard to the regularity of the days or hours worked. The record reflects that during that time period, Claimant, Doug, Jamie, Brock, and Morris performed work for Employer.[5]

The ESC's records, corroborated by Stallings's and Claimant's testimony, establish the first two characteristics, that Employer employed the same number of persons during the first quarter of 2009 through February 25, 2009. During the first quarter of 2009, Claimant, Doug, Jamie, and Brock were on Employer's payroll and worked together repairing, restoring, and painting automobiles for Employer. Claimant specifically recalled working with Doug, Jamie, Brock, and Morris. Doug consistently appeared on Employer's payroll beginning no later than 2007. Jamie and Brock joined the payroll in the first quarter of 2009. According to Stallings, Jamie returned

---

5. We exclude Stallings from this analysis because, although he worked for Employer as well as being the sole member of its limited liability company, the record does not indicate he elected to be included as an employee for workers' compensation purposes. *See* § 42–1–130 ("Any sole proprietor or partner of a business whose employees are eligible for benefits under this title may elect to be included as employees under the workers' compensation coverage of the business if they are actively engaged in the operation of the business and if the insurer is notified of their election to be included.").

to Employer during the first quarter of 2009, "[m]ost likely" while Claimant was working there.[6] The record does not indicate any of those men departed Employer's service before Claimant became injured. Rather, all but Claimant remained with Employer through the end of 2009.

In addition, the preponderance of the evidence demonstrates Claimant, Doug, Jamie, and Brock worked for Employer with some constancy and not by chance or for a particular occasion. According to the ESC's records, all of those men appeared on Employer's payroll during the first quarter of 2009, and all but Claimant continued working for Employer through the end of 2009. Furthermore, Stallings established Claimant, Doug, Jamie, and Brock worked regularly for Employer and not for a particular occasion. He testified those men "would do, you know, the regular flow of work." By contrast, Stallings explained Employer did not always have vehicles with heavy frame damage. When he received such a vehicle, he called Morris to come to the shop and repair it. Morris used Employer's heavy frame machine but otherwise supplied his own tools. However, Morris did not appear on the company payroll: his work for the shop was "sporadic," and Employer issued him a form 1099.

■ Accordingly, based upon the facts described above, we find the preponderance of the evidence demonstrates Employer regularly employed Claimant, Doug, Jamie, and Brock during the first quarter of 2009. As a result, the Appellate Panel did not err in finding it had jurisdiction over Employer under the Act.[7]

---

6. Claimant recalled Jamie returned to work "a few weeks before" the injury, and Employer failed to present any evidence to the contrary.

7. We decline Claimant's invitation to affirm the finding of jurisdiction because Employer became subject to the Act by procuring workers' compensation insurance. This court has previously examined the effect of "[m]ere procurement of workers' compensation insurance" and determined it does not estop the employer from denying workers' compensation coverage. *Deanhardt v. Neal C. Deanhardt Masonry Contractors*, 298 S.C. 244, 248, 379 S.E.2d 726, 728 (Ct.App.1989). To subject itself to the Act, an otherwise exempt employer must substantially comply with section 42–1–380, which permits an employer to file a written notice of its desire to be subject to the terms and conditions of the Act. *Id.* When no evidence indicates an employer filed the requisite written notice of its desire to subject itself to the Act, an appellate court

## II. NOTICE

■ Employer asserts the Appellate Panel erred in finding Claimant reported the injury timely and failing to make any conclusion of law thereon. We agree.

"The Administrative Procedures Act (APA) provides the standard for judicial review of decisions by the [Appellate Panel]." *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010); *accord Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 133–34, 276 S.E.2d 304, 306 (1981). Under the APA, this court can reverse or modify a decision of the Appellate Panel if the substantial rights of the appellant "have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *Transp. Ins. Co. v. S.C. Second Injury Fund*, 389 S.C. 422, 427, 699 S.E.2d 687, 689–90 (2010); S.C.Code Ann. § 1–23–380(5)(d), (e) (Supp.2012).

■ The Appellate Panel is the ultimate factfinder in workers' compensation cases. *Shealy v. Aiken Cnty.*, 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). As a general rule, this court must affirm the findings of fact made by the Appellate Panel if they are supported by substantial evidence. *Pierre*, 386 S.C. at 540, 689 S.E.2d at 618. "Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the [Appellate Panel] reached." *Hill v. Eagle Motor Lines*, 373 S.C. 422, 436, 645 S.E.2d 424, 431 (2007). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent the [Appellate Panel's] finding from being supported by substantial evidence." *Id.*

■ Generally, an injured employee must give his employer notice of the accident upon "the occurrence of an accident, or as soon thereafter as practicable," but he must do so within ninety days after the accident. S.C.Code Ann. § 42–15–20 (Supp.2012). The notice provisions of section 42–15–20 "should be liberally construed in favor of claimants." *Etheredge v. Monsanto Co.*, 349 S.C. 451, 458, 562 S.E.2d 679, 683

---

will not find the exemption waived. *Id.* In the case at bar, no evidence indicates Employer filed a notice indicating its desire to be subject to the Act.

(Ct.App.2002), citing *Mintz v. Fiske–Carter Constr. Co.*, 218 S.C. 409, 414, 63 S.E.2d 50, 52 (1951). Nonetheless, the *Etheredge* court recognized the basic information a claimant must convey in giving such notice:

> For adequate notice, there must be "some knowledge of accompanying facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim." *Larson's Workers' Compensation Law* § 126.03[1][b] (2001) (footnotes omitted). "Generally, in order that the knowledge be imputed to the employer, the person receiving it must be in some supervisory or representative capacity, such as foreman, supervisor ... physician, or nurse." *Id.* at § 126.03[2][a] (footnotes omitted).

*Id.* at 457, 562 S.E.2d at 682.[8] The notice requirement protects the employer by enabling him to "investigate the facts and question witnesses while their memories are unfaded, and ... to furnish medical care [to] the employee in order to minimize the disability and conseque[n]t liability upon the employer." *Mintz*, 218 S.C. at 414, 63 S.E.2d at 52. "The claimant bears the burden of proving compliance with these notice requirements." *Lizee v. S.C. Dep't of Mental Health*, 367 S.C. 122, 127, 623 S.E.2d 860, 863 (Ct.App.2005).

We find the Appellate Panel's determination that Claimant provided Employer with adequate notice he had suffered a work-related injury is not supported by substantial evidence in the record, and we reverse. In particular, the record does not contain substantial evidence that Claimant notified Employer of any "facts connecting [his] injury ... with [his] employment." *See Etheredge*, 349 S.C. at 457, 562 S.E.2d at 682 (recognizing adequate notice supplies "facts connecting the injury or illness with the employment, and indicating to a reasonably conscientious manager that the case might involve a potential compensation claim" (citation and quotation marks omitted)).

---

**8.** We acknowledge the notice requirement outlined by the *Etheredge* court is more relaxed than the former statutory notice requirement. *See, e.g., Sanders v. Richardson*, 251 S.C. 325, 328, 162 S.E.2d 257, 258 (1968) (reciting statutory notice must be in writing and "shall state in ordinary language the name and address of the employee and 'the time, place, nature and cause of the accident and of the resulting injury' ").

The only evidence in the record of the notice Claimant asserts is the testimony of Claimant and Stallings. Claimant testified: "The next day I said something to [Stallings] that I was pretty sore, I must have hurt myself." Claimant further testified he and Stallings "talked about" his back hurting during his last couple of weeks with Employer, but he did not indicate whether their conversation in any way connected the injury with his work for Employer. Stallings denied learning of the injury before receiving Claimant's Form 50 but also admitted he simply did not remember Claimant reporting an injury.

While these facts establish Claimant reported *an* injury to Employer, they are devoid of any reference to an alleged connection between Claimant's injury and his employment. In fact, the only reference in the record to Claimant asserting to Employer a connection between his injury and his work lies in a question Employer's attorney posed to Claimant at the hearing before the single commissioner: "And you said you had some discussion, you said you mentioned that your back was sore from working one day is that what you told [Stallings]?" We find this question, although answered affirmatively by Claimant, does not constitute substantial evidence in view of the entire record. *See Hill,* 373 S.C. at 436, 645 S.E.2d at 431 ("Substantial evidence is that evidence which, in considering the record as a whole, would allow reasonable minds to reach the conclusion the [Appellate Panel] reached."). Accordingly, the Appellate Panel erred by entering a finding that was not supported by substantial evidence in the record.

## III. REMAINING ISSUES

Because the issue of notice is dispositive of this appeal, we need not address Employer's remaining issues. *See Earth-scapes Unltd., Inc. v. Ulbrich,* 390 S.C. 609, 617, 703 S.E.2d 221, 225 (2010) (recognizing when the disposition of a prior issue is dispositive of an appeal, analysis of the remaining issues is unnecessary).

## CONCLUSION

We find the preponderance of the evidence in the record demonstrates Employer regularly employed four employees

during the first quarter of 2009. Therefore, we affirm the Appellate Panel's determination of jurisdiction.

We further find substantial evidence in the record does not support the Appellate Panel's determination that Claimant provided Employer with timely notice of his injury. Consequently, we reverse the award of benefits to Claimant. Because the reversal on the issue of notice disposes of this appeal, we do not reach the remaining issues on appeal. Accordingly, the decision of the Appellate Panel is

**REVERSED.**

HUFF and GEATHERS, JJ., and CURETON, A.J., concur.