1976

Essie Lee HOLMAN, Appellant v. BULLDOG TRUCKING COMPANY and Insurance Company of North America, Respondents, In re Mack Arthur HOLMAN, deceased employee, Essie Lee Holman, claimant, Bulldog Trucking Co., Employer and Ins. Co. of North America, Carrier, Defendants.

(428 S.E. (2d) 889)

Court of Appeals

*Frederick M. Ziegler*, Columbia, *for appellant.*

*W. Hugh McAngus*, Columbia, *for respondents.*

Heard Sept. 15, 1992.

Decided March 22, 1993.

BELL, Judge:

This is a workers' compensation case. Essie Lee Holman, the claimant, sought benefits for the accidental death of her son, Mack Arthur Holman, arising out of and in the course of his employment with Bulldog Trucking Company. The single commissioner dismissed the claim upon a finding that the deceased worker was not injured in South Carolina; nor was his employment located in South Carolina; nor did the claimant prove he was hired in South Carolina. The full commission affirmed. On a petition for judicial review, the circuit court affirmed the order of the full commission. Holman appeals. We affirm.

Bulldog is an interstate common carrier with a flatbed trailer terminal in Savannah, Georgia. The deceased resided in Holly Hill, South Carolina, and held a South Carolina driver's license. He applied for employment as a long-distance driver at the Savannah Terminal on April 5, 1988. The Savannah Terminal accepted his application. He began work on April 7, 1988, and made his first trip on April 8, 1988.

At all times, the deceased worked out of and was dispatched from the Savannah Terminal. He drove to and from his home and the Savannah Terminal in his personal vehicle. He picked up his truck each Sunday night in Savannah and returned it to Savannah at the end of the work week. He was required to call the Savannah Terminal dispatcher twice a day, and also when he delivered or picked up a load and when he bought fuel. He wore company uniforms provided by the Savannah Terminal. He maintained and washed his truck at the Savannah Terminal. The truck was registered and licensed in the State of Georgia. Bulldog prepared his paycheck at its corporate headquarters in Carnsville, Georgia, and hand delivered it to him each Friday at the Savannah Terminal. The company withheld Georgia income tax from his pay. His group and life insurance was written through the Savannah Terminal. Bulldog paid for Georgia's workers' compensation insurance on the deceased, because it considered him to be employed in Georgia. The company also paid for workers' compensation insurance in South Carolina to cover claims arising under the South Carolina Workers' Compensation Law. The deceased made deliveries and pickups in Georgia, South Carolina, North Carolina, Virginia, Tennessee, Alabama, Mississippi, Louisiana, Ohio, and Illinois. He either delivered or picked up

26% of his loads in South Carolina. He drove through South Carolina on approximately 56% of his trips and through Georgia on 100% of his trips. He filed his trip logs each Friday at the Savannah Terminal.

On November 29, 1988, the employee was killed in Georgia in an accident on Interstate Highway 95 while driving his Bulldog truck from the Savannah Terminal to Jacksonville, Florida. His mother filed for and received workers' compensation benefits in Georgia.

## I.

S.C. Code Ann. § 42-15-10 (1985) provides in pertinent part:

> Any employee covered by the provisions of this title is authorized to file his claim under the laws of the state where he is hired, the state where he is injured, or the state where his employment is located.

A claimant who files for and accepts workers' compensation benefits in another state is not precluded from seeking additional benefits for which she is authorized to file through the South Carolina Commission. *See Price v. Horton Motor Lines, Inc.*, 201 S.C. 484, 23 S.E. (2d) 744 (1942). However, to file a claim in South Carolina, she must satisfy the requirements of Section 42-15-10. *See Nolan v. National Sales Co.*, 292 S.C. 1, 354 S.E. (2d) 575 (Ct. App. 1987), *aff'd*, 294 S.C. 371, 364 S.E. (2d) 752 (1988).

The General Assembly added the above quoted language to the South Carolina Workers' Compensation Law in 1974.[1] Prior to this amendment, an employee injured outside the State had to satisfy four preconditions for filing a claim with the South Carolina Commission: (1) his contract of employment had to be made in this State; (2) the employer's place of business had to be in this State; (3) the employee's residence had to be in this State; and (4) the contract of employment had to be for services to be performed not exclusively outside this State. *See Arant v. First Southern Co.*, 249 S.C. 305, 153 S.E. (2d) 919 (1967); *Younginer v. J.A. Jones Construction Co.*, 215

---

[1] Act No. 1059, Acts and Joint Resolutions of the General Assembly of South Carolina, 1974, 58 STAT. 2265.

S.C. 135, 54 S.E. (2d) 545 (1949). these conditions were con- ¦ junctive rather than alternative, so that a claimant had to meet all of them or his claim failed. *See Tedars v. Savannah River Veneer Co.*, 202 S.C. 363, 25 S.E. (2d) 235, 147 A.L.R. 914 (1943). The employee's residence in South Carolina was a determanitive factor under this test. *See id.*

The 1974 amendment liberalized the requirements of ■ existing law. The conditions for filing were made alternative rather than conjunctive, so that a claimant had only to meet one of them to file a claim in South Carolina. Each became a sufficient condition, not, as before, a necessary condition, for filing in this State. Additionally, the Legislature eliminated residence in this State as a determanitive factor. Under Section 42-15-10, the employee's state of residence neither precludes nor authorizes filing a South Carolina claim.

## II.

This appeal presents two questions for our review: (A) Is a long-distance truck driver's employment "located" in South Carolina for purposes of Section 42-15-10 if he resides in this State and performs a significant percentage of his assigned trips in South Carolina? (B) Should the law of South Carolina be extended to encompass this case by construing Section 42-15-10 to create a presumption that a deceased employee who resided in South Carolina was hired in this State?

## A.

The claimant argues that under the South Carolina statute a truck driver's employment can be "located" in more than one state, provided he travels into other states in the course of his employment and his employer conducts substantial business there.

In construing a statute, the function of the court is to ■ determine and give effect to the intention of the legislature based upon the words of the statute itself. *McGlohorn v. Harlan*, 254 S.C. 207, 174 S.E. (2d) 753 (1970); *Busby v. State Farm Mutual Automobile Insurance Co.*, 280 S.C. 330, 312 S.E. (2d) 716 (Ct. App. 1984). The court should first resort to the statute, and if the legislative intent is apparent on its face, the court may not embark upon a search beyond its words to discover legislative intent. *Wright v. Col-*

*leton County School District*, 301 S.C. 282, 391 S.E. (2d) 564 (1990); *Abell v. Bell*, 229 S.C. 1, 91 S.E. (2d) 548 (1956). The words of the statute must be given their plain, ordinary meaning without resorting to force construction to limit or expand the statute's operation. *First Baptist Church of Mauldin v. City of Mauldin*, — S.C. —, 417 S.E. (2d) 592 (1992).

Section 42-15-10 authorizes an employee covered by the South Carolina Worker's Compensation Law to file a claim in "the state where his employment is located." Courts in other jurisdictions have adopted various rules to decide where a transient worker's employment is located. Under the "base of operation" rule, the worker's employment is located at the employer's place of business to which he reports, from which he receives his work assignments and from which he starts his road trips, regardless of where the work is performed. *See Holland v. W.C.A.B. (Pep Boys)*, 137 Pa. Commw. 22, 586 A. (2d) 988 (1990). Under the "domicile and employment" rule, employment is located in the state where the worker has his residence and actually performs a significant part of his work for the employer. *See Rice v. Keystone View Co.*, 210 Minn. 227, 297 N.W. 841 (1941). Under the "substantial employment" rule, the worker's employment is located in any state in which his employer conducts substantial business and he spends a substantial part of his working time in the service of the employer. *See Hagberg v. Colonial & Pacific Frigidways, Inc.*, 279 Minn. 396, 157 N.W. (2d) 33 (1968).

On its face, Section 42-15-10 shows the legislative intent was to enact the "base of operation" rule in South Carolina. The use of the definite article "the" and the singular noun "state" shows that the Legislature intended the word "located" to refer to one state, not many.[2]

For the purposes of our statute, the deceased's employment was located in Georgia, because that was "the state" where he reported to his employer's place

___

[2] The Model Workmen's Compensation and Rehabilitation Law provides that an injured employee may file a claim in a state where his employment is "principally localized." WORKMEN'S COMPENSATION AND REHABILITATION LAW (Revised) (The Council of State Governments 1974). Under Section 7(d)(4) of the Model Act, employment is "principally localized" in a state if the employee works from a place of business of his employer in the state (i.e., the "base of operation" rule), or, in the alternative, when he is domiciled and spends a substantial part of his working time in the service of

of business for duty, where he picked up and returned his company truck, where he received his work assignments and from which he was dispatched, where he called in during the course of his work, and where he returned weekly when he had completed his work for the employer. Accordingly, the commission was correct in concluding the location of his employment did not authorize him to file for worker's compensation in South Carolina. *Cf. Patton v. Industrial Commission*, 147 Ill. App. (3d) 738, 101 Ill. Dec. 215, 498 N.E. (2d) 539 (1986), *appeal denied*, 113 Ill. (2d) 577, 106 Ill. Dec. 49, 505 N.E. (2d) 355 (1987).

## B.

The commission also held the deceased's claim could not be filed in South Carolina as "the state where he is hired," because there was no evidence he was hired in South Carolina.

■ The claimant concedes there is no evidence the deceased was hired in South Carolina. She urges, however, that if the injured employee is a legal resident of South Carolina and there is no ready means to prove his place of hiring, this Court should create a statutory presumption that the worker was hired in South Carolina. Counsel argued very ably that South Carolina's laws are enacted primarily for the benefit of her own citizens. Therefore, the presumption should be judicially mandated to afford our citizens the full benefit of their own State's laws. It is not unreasonable, counsel suggests, to shift the burden of proof to the employer to rebut a presumption of hiring in this State, because the employer, in a case like this one, is in a better position to present evidence to show where the hiring took place.

■ While the argument has considerable force, it is not the law in this State. In South Carolina, the claimant has the burden of proving such facts as will render the in-

his employer in the state (i.e., the "domicile and employment" rule). In South Carolina, the Governor's Advisory Committee on Workmen's Compensation and the legislative Committee Created to Study the Workmen's Compensation Laws of the State, both recommended adoption of the "principally localized" rule of the Model Act. *See* REPORT OF THE GOVERNOR'S ADVISORY COMMITTEE ON WORKMEN'S COMPENSATION; REPORT OF THE COMMITTEE CREATED TO STUDY THE WORKMEN'S COMPENSATION LAWS OF THE STATE (1974). Instead, the General Assembly enacted a nonuniform provision for South Carolina, now codified as Section 42-15-10.

jury and ensuing death compensable within the Workers' Compensation Law. *See Sola v. Sunny Slope Farms*, 244 S.C. 6, 135 S.E. (2d) 321 (1964). We cannot shift the burden of proof laid down by this rule under the guise of statutory construction.

Moreover, as discussed above, when the General Assembly amended our Workers' Compensation Law in 1974, it deleted South Carolina residence as a factor authorizing an injured worker to file a claim under the laws of this State.[3] To create the presumption counsel urges upon us would, as a practical matter, substitute place of residence for place of hire as the factor authorizing Holman's claim to be filed in this State. This substitution would contravene a specific policy enacted by our Legislature.

The legislature, not the judiciary, is the proper branch of government to consider and balance the competing interests and policies embodied in workers' compensation laws. *See Cook v. Mack's Transfer & Storage*, 291 S.C. 84, 352 S.E. (2d) 296 (Ct. App. 1986), *cert. denied*, 292 S.C. 230, 355 S.E. (2d) 861 (1987); *Spoone v. Newsome Chevrolet Buick*, —S.C. —, 412 S.E. (2d) 434 (Ct. App. 1991), *Aff'd*, — S.C. —, 424 S.E. (2d) 489 (1992). When the Legislature has enacted a rule embodying a particular policy choice, the courts have no power to annul the Legislature's judgment by substituting their own views of sound public policy. *See id.* It is not the province of the courts to perform legislative functions. *Henderson v. Evans*, 268 S.C. 127, 232 S.E. (2d) 331 (1977). For this reason, we are not free to create a statutory presumption that, for purposes of Section 42-15-10, an employee who resides in this State is hired in this State.

Affirmed.

SHAW and CURETON, JJ., concur.

---

[3] *See* footnote 2. The General Assembly rejected the "domicile and employment" test.