IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-420

Filed: 20 December 2016

North Carolina Industrial Commission, I.C. No. X07855

JEFFREY EUGENE BEAL, Employee, and LAWRENCE CRAIGE, Guardian of the Estate of JEFFREY EUGENE BEAL, Plaintiffs

v.

COASTAL CARRIERS, INC., (Alleged) Employer, and ZURICH AMERICAN INSURANCE COMPANY, (Alleged Carrier); Defendants; and THE WAREHOUSING COMPANY, LLC, (Alleged) Employer and KEY RISK INSURANCE COMPANY, (Alleged) Carrier, Defendants.

Appeal by defendant-appellant Key Risk Insurance Company from opinion and award entered 15 December 2015 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 October 2016.

> *Stiles, Byrum & Horne, L.L.P., by Henry C. Byrum, Jr., and B. Jeanette Byrum, for defendants-appellees Coastal Carriers, Inc. and Zurich American Insurance Company.*

> *Hedrick Gardner Kincheloe & Garofalo, LLP, by Erica B. Lewis, Shelley W. Coleman, and M. Duane Jones, for defendant-appellant Key Risk Insurance Company.*

DAVIS, Judge.

This workers' compensation insurance coverage dispute arises from a workplace accident that occurred in Florida and injured an employee who lived in North Carolina and had been lent to an employer based in South Carolina. Key Risk Insurance Company ("Key Risk") appeals from an opinion and award of the North Carolina Industrial Commission ordering Key Risk to (1) pay temporary total

disability compensation to Jeffrey Eugene Beal ("Plaintiff") pursuant to the North Carolina Workers' Compensation Act; and (2) pay all indemnity benefits owed on Plaintiff's claim. After careful review, we reverse and remand.

## Factual Background

The facts giving rise to this case involve two furniture moving and installation companies — Coastal Carriers, Inc. ("Coastal") and The Warehousing Company, LLC ("TWC"). On 20 July 2010, TWC — a company based in South Carolina — entered into an agreement with Winter Park Construction Company ("Winter Park") to provide furniture, fixtures, and electronics installation services at Plantation Beach Club Condominiums in Stuart, Florida (the "Florida Project"). Because TWC did not have enough manpower to perform the job, TWC's owner, Sidney Baird, contacted Gordon Ray — Baird's longtime friend who was the president of Coastal — to see about the possibility of TWC hiring four of Coastal's employees to temporarily work for TWC on the Florida Project.

In 2010, Plaintiff was working for Coastal, which was based in North Carolina. At a safety meeting of Coastal employees, Ray shared with them the information regarding the Florida Project. Upon learning of the employment opportunity from Ray, Plaintiff and three other Coastal employees — Michael Porter, Anthony Brown, and Randy Wallace — contacted Baird to inform him of their interest in working on the Florida Project. Baird offered each of the four employees the job — which they

each accepted — and told all of them that upon completion of the job, they would be paid by TWC.

Plaintiff worked on the Florida Project under the on-site supervision of his fellow Coastal employee, Porter, and a TWC employee named David Fleener. Baird kept in contact with Porter and Fleener on a daily basis from his home in South Carolina.

On 26 September 2010, while working at the Florida job site, Plaintiff was injured when he fell while lifting furniture to the second floor of the building where the TWC crew was working. As a result of the fall, he sustained multiple injuries.

On 22 October 2010, Plaintiff filed a Form 18 "Notice of Accident" with the Industrial Commission, seeking compensation for his injuries from Coastal's workers' compensation insurance carrier, Zurich American Insurance Company ("Zurich"), due to his need for medical care for which TWC's insurance carrier, Key Risk, had refused to pay. Zurich paid Plaintiff's medical compensation of $350,799.25 and disability compensation of $44,068.85.

On 16 September 2011, Coastal filed a motion to add TWC as a defendant to Plaintiff's workers' compensation action. The motion was granted on 27 October 2011. On 2 January 2013, Coastal filed a Form 33 "Request That Claim be Assigned for Hearing" requesting that "[TWC] and its workers' compensation carrier [Key Risk] pay benefits pursuant to the North Carolina Workers' Compensation Act." On 25

February 2013, Key Risk filed a Form 33R "Response to Request That Claim Be Assigned for Hearing" contending that Key Risk was not a party and "would be prejudiced if added into this claim as a party" more than two years after it was removed from a hearing docket.

On 9 July 2013, a hearing was held before Deputy Commissioner Melanie Wade Goodwin. Deputy Commissioner Goodwin issued an opinion and award providing that Coastal, Zurich, and TWC were jointly liable for indemnity and medical benefits paid by Zurich and ordering that Key Risk be dismissed with prejudice as a party-defendant in the matter. Coastal and Zurich filed a notice of appeal from the deputy commissioner's dismissal of Key Risk on 18 June 2014.

On 15 December 2015, the Full Commission issued an opinion and award containing the following pertinent findings of fact:

> 1. On September 26, 2010, Jeffrey Eugene Beal (hereinafter, "Jeffrey Beal" or "Mr. Beal" or "Plaintiff") was injured when he fell approximately 10-20 feet from a piece of equipment called a lull which was being used to lift furniture to the second floor of the building where The Warehousing Company, LLC (hereinafter, "TWC") crew was working. As a result of his fall, Mr. Beal sustained multiple injuries, including fractures of the left sphenoid wing, left lateral orbital wall, left maxillary sinus, and left zygomatic arch; a comminuted right distal radius and ulna fracture; a left elbow comminuted intra-articular olecranon fracture; multiple left rib fractures; a ruptured spleen and a mild subarachnoid hemorrhage.
>
> 2. On October 22, 2010, Jeffrey Beal filed a Form 18 Notice of Accident with the North Carolina Industrial

Commission seeking compensation for his injuries. The named Defendant was Coastal Carriers, Inc. (hereinafter, "Coastal"). Plaintiff's claim was accepted and paid by Coastal and Zurich American Insurance Company (hereinafter "Zurich") due to the emergent need for medical care which Key Risk Insurance Company (hereinafter, "Key Risk"), the workers' compensation carrier for TWC, would not address.

. . . .

5. On September 16, 2011, Defendant Coastal filed a Motion to Add Party-Defendant, seeking to add TWC, as a party Defendant. This Motion was granted by the Executive Secretary on October 27, 2011.

6. On September 26, 2010, Gordon Wayne Ray, Jr. (hereinafter Mr. Ray) was the President of Coastal, which was located in Wilmington, North Carolina. Coastal was a mover of household goods regulated by state and federal tariffs.

7. On September 26, 2010, Sidney "Skip" Baird (hereinafter, "Mr. Baird") was the owner of TWC located at 122 Watergate Drive, Myrtle Beach, South Carolina. TWC's business included the warehousing of and the installation of furniture, fixtures, and electronics at resort properties, installing furniture, fixtures, and electronics which was commercial work which was not regulated by state and federal tariffs.

. . . .

11. On July 20, 2010, TWC (through Mr. Baird) entered into a "Subcontract Agreement" with Winter Park Construction Company (hereinafter; "Winter Park") to provide furniture, fixture and electronics installation services at Plantation Beach Club Condominiums in Stuart, Florida. This contract was negotiated entirely by Mr. Baird on behalf of TWC and did not involve Mr. Ray or

Coastal in any way.

12.   Under the terms of the contract, TWC had eight days to complete the installation of furniture, fixtures and electronics in thirty-two units. At the time in question, TWC had multiple projects underway in various parts of the United States and did not have the manpower to complete all of these jobs. Mr. Baird's situation was further complicated by the fact that he was awaiting the birth of his daughter, which required him to remain in Myrtle Beach, South Carolina. Mr. Baird contacted Mr. Ray indicating he was "in a jam" and that he wanted to hire four of Mr. Ray's employees to work for TWC on a Florida job where all of the furniture, fixture and electronics installation had to be completed in eight days.

13. Sometime prior to September 19, 2010, Mr. Ray announced at a safety meeting of Coastal employees that Mr. Baird wanted to hire workers for a Florida project and since the work for his company was in a slow period, he instructed any of his interested workers to contact Mr. Baird directly. Mr. Ray did not select or designate any of his workers for the Florida job. His workers were free to accept or reject the offer of employment.

. . . .

15. Following this meeting, which occurred in North Carolina, four Coastal employees -- Michael Porter, Anthony Brown, Randy Wallace and Jeffrey Beal -- arranged with Mr. Baird to go to Florida to work for TWC. Prior to these workers leaving North Carolina, Mr. Baird spoke by telephone with each of these four men -- Michael Porter, Anthony Brown, Randy Wallace and Jeffrey Beal -- to give a "pep talk["] and discuss payment or wages at the completion of the job in Florida. Mr. Baird informed them they would be paid by TWC. Each one of these four men accepted Mr. Baird's offer of employment while still in North Carolina.

16. Plaintiff testified that he agreed to work the Florida job while he was in North Carolina.

17. The four individuals who agreed to work on the Florida project did not have reliable transportation. When informed of their transportation problems, Mr. Ray loaned the men a Coastal sales van to drive and gave them a gas card to purchase fuel. He expected to be reimbursed by TWC for these expenses.

. . . .

19. When the four individuals hired by TWC -- Michael Porter, Anthony Brown, Randy Wallace and Jeffrey Beal -- arrived in Florida, they went to a motel room that was paid for by Mr. Baird. Mr. Porter supervised the work for the first couple of days until David Fleener, an employee of TWC arrived on the site. Mr. Fleener then instructed the workers on what to do. Mr. Baird communicated with TWC workers multiple times on a daily basis while they were in Florida and personally supervised them through Michael Porter and David Fleener. This included setting working hours and monitoring progress on the job. Mr. Ray never supervised the work of the TWC crew.

20. Prior to September 26, 2010, Mr. Ray had a conference in West Palm Beach and he decided to stop by the Florida jobsite for a visit on his way to the conference. During the period of about thirty minutes when he was at the site, he cautioned the TWC workers to "be careful" but did not offer supervision or instruct them on their work. While Mr. Ray was present, he was approached by Mr. Porter about loaning Mr. Brown, Mr. Wallace, Mr. Beal and him money for food. Mr. Baird had promised to send the TWC crew money, but had failed to do so. Mr. Ray loaned each man $100.00 out of his personal funds.

21. When TWC's project in Florida was completed, Mr. Baird paid Michael Porter, Anthony Brown, Randy Wallace and Jeffrey Beal for the work they did for TWC in Florida.

These workers (other than Plaintiff) collected their money in Myrtle Beach, South Carolina. The offices for TWC remained in Myrtle Beach, South Carolina the entire time the company was in existence.

22. Plaintiff was performing the work of TWC when his accident occurred.

23. Anthony Brown gave a statement under oath on February 17, 2012, which was included in the record, stating he was one of four individuals who traveled from North Carolina to Florida to work for TWC and was working on the project for a man named "Skip." Mr. Porter was the contact person with Mr. Baird, and the two were constantly talking. Mr. Brown considered himself to be an employee of TWC. When the job was completed, the TWC employees drove to Mr. Baird's apartment in Myrtle Beach, South Carolina where they collected their checks for the project.

24. Plaintiff testified by deposition on October 9, 2012 in a civil action he filed in Florida as a result of the September 26, 2010 accident. Plaintiff testified that he received $100.00 from Mr. Ray so he would have food when Mr. Ray visited the Florida jobsite with his wife and took a "tour through the motel." Plaintiff testified that he took orders from Michael Porter on the job and that Mr. Porter kept his hours. He was paid by Skip Baird for the work he performed in Florida. Mr. Ray never directed his work on the project.

. . . .

26. Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that Jeffrey Beal was not an independent contractor for TWC. He was expressly hired pursuant to an oral contract to leave North Carolina and go to work in Florida for a job that was to be completed in eight days. He did not possess any special skills in performing the type of work done by TWC. He did

not have control over any aspects of the work that he performed for TWC. Mr. Beal obtained his work directions from persons designated by Mr. Baird to be onsite supervisors. He had no power to hire or fire anyone. The work he did was part of the trade or business of TWC. He was paid wages and trip expenses by TWC.

27.   Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that Jeffrey Beal was an employee of TWC at the time of his injury. Mr. Baird, owner of TWC, expressly made a contract of hire with Plaintiff. The work Mr. Beal did for TWC was entirely the work of Mr. Baird and TWC and benefitted TWC and not Coastal. Mr. Baird and TWC had the right, and did in fact, control the details of the work done by Mr. Beal during the period he worked for TWC, including the date of his injury by accident. During the period Mr. Beal was hired to work for TWC, he did not do any work for Coastal and the work that he did for TWC was not part of the trade or business of Coastal. Mr. Beal and Mr. Baird on behalf of TWC agreed upon the employment terms. Coastal was not involved in the employment contract agreement, Mr. Ray did not assign employees to TWC; he only announced the availability of a temporary job with TWC and left the decision of whether to seek the job entirely up to any of his interested employees.

. . . .

32. The Full Commission finds that both Coastal and TWC are liable for all of the compensable consequences of Plaintiff's September 26, 2010 injury by accident in proportion to the wage liability of each employer.

33.   At the time of Plaintiff's injury on September 26, 2010, TWC was insured by Key Risk. There is a dispute, however, over whether the policy of insurance between Key Risk and TWC covered Plaintiff's claim herein.

34.   Mr. Baird arranged workers' compensation insurance

for the Florida project on behalf of TWC through Associated Insurors (hereinafter "Associated") in Myrtle Beach, South Carolina. In doing so, he explained to the agent the nature of his business and that TWC worked outside South Carolina. At the time of Plaintiff's injury, TWC had more projects outside South Carolina than within the State. It was Mr. Baird's understanding that TWC had workers' compensation coverage for each jobsite, including the jobsite in Florida where Plaintiff was injured.

35. As part of its Subcontract Agreement with Winter Park for the project in Stuart, Florida, TWC had to provide proof of workers' compensation insurance. Mr. Baird arranged for his insurance agent (Associated) to contact Winter Park to verify the required coverage. After that contact occurred, Associated sent Winter Park a certificate of insurance verifying workers' compensation insurance for TWC. The "Certificate Holder" was listed as Winter Park Construction, 221 Circle Drive, Maitland, Florida. After that contact occurred, Winter Park sent TWC the Subcontract Agreement to execute, and TWC went to work.

. . . .

61. Key Risk contends that the language of TWC's insurance policy provides for workers' compensation insurance coverage in South Carolina only, with additional coverage only if Plaintiff was hired in South Carolina or principally employed in South Carolina.

62. Based upon a preponderance of the evidence of record, the Full Commission finds that Plaintiff's employment was located in South Carolina because it is the only state in which he had any "base of operation." The only place of business ever maintained by TWC was located in Myrtle Beach, South Carolina. Plaintiff was hired from TWC's office in Myrtle Beach, South Carolina. Mr. Baird provided work assignments to the employees, including Plaintiff, working on the Winter Park project from his place of business in South Carolina and Plaintiff was paid out of

South Carolina for the work he performed in Florida. The other three lent employees from Coastal -- Michael Porter, Anthony Brown and Randy Wallace -- traveled to Myrtle Beach, South Carolina to receive payment from TWC for the work they performed (along with Plaintiff) in Stuart, Florida upon completion of the job.

63. Based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that Plaintiff's claim for compensation is covered under the Key Risk policy issued to TWC.

64. Coastal and TWC are jointly liable for medical payments made consequent of Plaintiff's September 26, 2010 injury. Since Coastal had no "wage liability" to Plaintiff for the Florida project, TWC owes all of Plaintiff's indemnity compensation. As a result of Plaintiff's injuries, Zurich has paid as carrier for Coastal, medical compensation in the amount of $350,799.25 and indemnity compensation in the amount of $44,068.85. TWC's carrier, Key Risk, has paid nothing. TWC and Key Risk are obligated to reimburse Zurich for TWC's and Key Risk's (50%) share of the joint amount of the medical compensation due as a result of Plaintiff's claim. TWC and Key Risk are obligated to reimburse Zurich for all the indemnity compensation due Plaintiff that Zurich has paid. Since the matter in controversy before the Full Commission is between the Defendants, the amount of Plaintiff's average weekly wage is not being determined.

Based on these findings of fact, the Commission made the following pertinent conclusions of law:

1. On September 26, 2010, Plaintiff, Jeffrey Beal, sustained a compensable injury by accident due to a fall which arose out of and in the course of his employment with TWC and involved the interruption of his work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. N.C. Gen. Stat. §§ 97-

2(5); 97-2(6).

2. At the time of Plaintiff's injury on September 26, 2010, four employees, Michael Porter, Anthony Brown, Randy Wallace and Plaintiff, were employees of TWC who had been lent by Coastal to TWC. N.C. Gen. Stat. § 97-2; S.C. Code Ann. § 42-1-360(2).

3. The Full Commission concludes that the North Carolina Industrial Commission has jurisdiction over Plaintiff's claim. . . .

. . . .

6. The Full Commission concludes that Plaintiff was an employee of TWC, not an independent contractor, at the time of his injury on September 26, 2010. . . .

. . . .

9. The Full Commission concludes, based upon a preponderance of the evidence of record, that the employment relationship Plaintiff had with TWC met all three of the conditions to establish a "special employer" relationship . . . . The preponderance of the evidence of record establishes that Plaintiff made a contract of hire with TWC; the work Plaintiff was doing for TWC on the Florida project was work involving furniture, fixture and electronics installations that TWC subcontracted with Winter Park to perform and was different from the type of work Plaintiff did for Coastal, a household moving company; Coastal had no part in negotiating the subcontract agreement that TWC made with Winter Park and there was no agreement between TWC and Coastal for Coastal to share the profits from the project; the work being done by Plaintiff was essentially that of TWC, the special employer; and TWC, the special employer, had the right to control, and did control, the details of the work that Plaintiff did on the Florida project. *Anderson v. Demolition Dynamics, Inc.*, 136 N.C. App. 603, 607, 525 S.E.2d 471,

473 (2000).

10. The Full Commission concludes that Coastal remained Plaintiff's general employer while he was working for TWC since the preponderance of the evidence and the reasonable inferences therefrom, indicate that Coastal was the general employer of Plaintiff while he was working for TWC, as Plaintiff and the three other workers Coastal lent to TWC had an expectation of returning to work with Coastal when the job with TWC was completed. Therefore, the legal presumption that the general employment with Coastal continued is not rebutted by a "clear demonstration." *Collins v. James Paul Edwards, Inc.*, 21 N.C. App. 455, 204 S.E.2d 873 (1974); *Anderson v. Demolition Dynamics, Inc.*, 136 N.C. App. 603, 607, 525 S.E.2d 471, 473 (2000).

11. Based upon a preponderance of the evidence of record, the Full Commission concludes that Plaintiff was lent by Coastal to TWC and that at the time of his injury on September 26, 2010, he was jointly employed by both TWC and Coastal and both employers are jointly liable for Plaintiff's injuries. N.C. Gen. Stat. § 97-51; *Collins v. James Paul Edwards, Inc.*, 21 N.C. App. 455, 204 S.E.2d 873 (1974); *Anderson v. Demolition Dynamics, Inc.*, 136 N.C. App. 603, 607, 525 S.E.2d 471, 473 (2000).

. . . .

14. The Commission has the inherent power in this case to order TWC and Key Risk to reimburse Coastal and Zurich for benefits paid or to be paid on Plaintiff[']s claim. . . .

. . . .

17. Key Risk further contends that Key Risk's obligation under a policy must be defined by the terms of the policy itself and that in construing policy language, basic contract rules apply. If the terms of a contract are unambiguous, the

- 13 -

contract must be enforced. *South Carolina Ins. Co. v. White*, 301 S.C. 133, 390 S.E.2d 471 (1990). Key Risk argues that coverage cannot be extended to Plaintiff under the "Other State Insurance" portion of the policy because Plaintiff's claim does not meet the following conditions of the policy: "The employee claiming benefits was either hired under a contract of employment made in a state listed in Item 3.A. of the Information Page or was, at the time of the injury, principally employed in a state listed in Item 3.A. of the Information Page. . . ."

18. It is undisputed that the substantive law of South Carolina applies to this case. . . .

. . . .

21. Coastal relies on the provisions of S.C. Code Ann. § 42-[1]5-10, which state: "Any employee covered by the provisions of this Title is authorized to file his claim under the laws of the state where he is hired, the state where he is injured, or the state where his employment is located.["] S.C. Code Ann. § 42-15-10 does not specifically use the term "principally employed," and instead refers to where an employee's employment is "located." S.C. Code Ann. § 42-15-10.

22. Key Risk contends, however, that Plaintiff must first show that his claim comes under the jurisdiction of the South Carolina Workers' Compensation Act before South Carolina statutory law can be applied to Plaintiff's claim.

23. The Full Commission concludes that South Carolina could have exercised jurisdiction over Plaintiff's claim had he chosen to file his claim in South Carolina because South Carolina is the state where Plaintiff's employment was located. To determine where a worker's employment is located, South Carolina follows the "base of operation rule." *Hill v. Eagle Motor Lines*, 373 S.C. 422, 429-30, 645 S.E.2d 424, 427 (2007) (quoting *Holman v. Bulldog Trucking Co.*, 311 S.C. 341, 346, 428 S.E.2d 889, 892 (1993)). Under this

rule, "the worker's employment is located at the employer's place of business to which he reports, from which he receives his work assignments, and from which he starts his road trips, regardless of where the work is performed." *Id.* at 373 S.C. [sic] at 429, 373 S.E.2d at 432. Where the work is performed is irrelevant on the issue of where an employee's employment is located. *Id.* In the present case, the only place of business ever maintained by TWC was located in Myrtle Beach, South Carolina. Plaintiff was hired from TWC's office in Myrtle Beach, South Carolina. Mr. Baird (TWC) provided detailed and specific work assignments to the employees, including Plaintiff, working on the Winter Park project from his place of business in South Carolina and Plaintiff was paid out of South Carolina for the work he performed in Florida. The other three lent employees from Coastal -- Michael Porter, Anthony Brown and Randy Wallace -- traveled to Myrtle Beach, South Carolina to receive payment from TWC for the work they performed in Stuart, Florida upon completion of the job. S.C. Code Ann. § 42-15-10*; Hill v. Eagle Motor Lines*, 373 S.C. 422, 429-30, 645 S.E.2d 424, 427 (2007). The Court of Appeals of South Carolina in *Voss v. Ramco, Inc.*, 325 S.C. 560, 482 S.E.2d 582 (1997), held that the legislature did not intend to exclude all transient employment that did not fit neatly within the base of operations test set out in *Holman. Id.* The concept of "base of operation" rule presupposes that all employees have a fixed base of operation [to] which jurisdiction over a workers' compensation claim will attach. *Id.* The Court of Appeals in *Voss* ultimately held that South Carolina was the state where the employee's employment was located, given the amount of control exerted over the employee by his employer, who operated out of South Carolina, even though the employee received his daily assignments from wherever his employer was located that day and he started his road trips from wherever the group was located, but never from South Carolina. *Voss v. Ramco, Inc.*, 325 S.C. 560, 482 S.E.2d 582 (1997). The Supreme Court of South Carolina agreeing with the Court of Appeals' analysis in *Voss*, held in *Oxendine v. Davis*, 373 S.C. 438, 646 S.E.2d

143 (2007), that the base of operations rule is to "determine the location of nomadic employment based on the employer's place of business," and used other factors outside of those defined in *Holman*, such as the employee reporting to the employer's business in South Carolina to be paid, to determine the employee's location of employment. *Id.* The Supreme Court in *Oxendine* ultimately held that an employer's base of operations was in South Carolina when the employer clearly operated his business in South Carolina. *Id.* at 445, [646] S.E.2d at 150. Thus, even if the facts of the present case do [not] have all of the factors under the base of operations test set out in *Holman*, following the analysis of *Oxendine* and *Voss*, Plaintiff's employment would still be located in South Carolina, given the amount of the control exerted over Plaintiff by Mr. Baird (TWC), who clearly operated his business out of South Carolina. *Oxendine v. Davis*, 373 S.C. 438, 646 S.E.2d 143 (2007); *Voss v. Ramco, Inc.*, 325 S.C. 560, 482 S.E.2d 582 (1997).

24. Applying the applicable provisions of the South Carolina law to the current claim, the Full Commission finds that the Key Risk policy provided coverage for Plaintiff's claim filed in North Carolina. Pursuant to S.C. Code Ann. § 42-5-60, "Every policy for the insurance of the compensation provided in this Title or against liability therefore shall be deemed to be made subject to provisions of this Title . . . ." Therefore, the statutory provisions of the South Carolina Workers' Compensation Code are a required part of the Key Risk policy for workers' compensation insurance issued to TWC. Also, S.C. Code Ann. § 42-5-70 provides that jurisdiction of the insured for the purpose of this Title shall be jurisdiction of the insurer and S.C. Code Ann. § 42-5-60 requires that the Key Risk policy conform to South Carolina law. These statutory requirements are reflected in the language of the Key Risk workers' compensation insurance policy issued to TWC. The policy states, "Jurisdiction over you is jurisdiction over us for purposes of workers' compensation law. We are bound by decisions against you under the law, subject to

the provisions of this policy that are not in conflict with the law." The policy also provided that, "Terms of this insurance that conflict with the workers' compensation law are changed by this statement to conform to that law." S.C. Code Ann. § 42-5-70. Key Risk, in issuing its workers' compensation policies, has submitted to the jurisdiction of South Carolina and its statutory provisions governing workers' compensation claims. Based upon the "base of operation" analysis above, the employment for the other three lent employees from Coastal was also located in South Carolina. Therefore, TWC had four or more employees in South Carolina for the purposes of jurisdiction under South Carolina Workers' Compensation Act. S.C. Code Ann. § 42-1-360(2).

25. The Full Commission concludes that the preponderance of the evidence of record establishes that South Carolina has jurisdiction over TWC, the insured, and that the workers' compensation insurance policy issued by Key Risk to TWC covered Plaintiff's injury, requiring Key Risk to reimburse Coastal and Zurich pursuant to N.C. Gen. Stat. § 97-86.1(d). . . .

Key Risk filed written notice of appeal from the Commission's 15 December 2015 Opinion and Award.[1]

## Analysis

Appellate review of an opinion and award of the Industrial Commission is "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Philbeck v. Univ. of Mich.*, 235 N.C. App. 124, 127, 761 S.E.2d 668, 671 (2014)

---

[1] The appellees in this appeal are Coastal and Zurich. At times in this opinion, we refer to them jointly as "Coastal."

(citation and quotation marks omitted). "The findings of fact made by the Commission are conclusive on appeal if supported by competent evidence even if there is also evidence that would support a contrary finding. The Commission's conclusions of law, however, are reviewed *de novo*." *Morgan v. Morgan Motor Co. of Albemarle*, 231 N.C. App. 377, 380, 752 S.E.2d 677, 680 (2013) (internal citations omitted), *aff'd per curiam*, 368 N.C. 69, 772 S.E.2d 238 (2015).

Before addressing Key Risk's arguments, we must first determine whether the Commission had jurisdiction over Plaintiff's workers' compensation claim. North Carolina's Workers' Compensation Act provides, in pertinent part, as follows:

> Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, then the employee or his dependents or next of kin shall be entitled to compensation *(i) if the contract of employment was made in this State*, (ii) if the employer's principal place of business is in this State, or (iii) if the employee's principal place of employment is within this State; provided, however, that if an employee or his dependents or next of kin shall receive compensation or damages under the laws of any other state nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this Article.

N.C. Gen. Stat. § 97-36 (2015) (emphasis added).

In order to determine where a contract of employment was made, we apply the "last act" test. *Murray v. Ahlstrom Indus. Holdings, Inc.*, 131 N.C. App. 294, 296, 506 S.E.2d 724, 726 (1998). "For a contract to be made in North Carolina, the final act

necessary to make it a binding obligation must be done here." *Id.* (citation, quotation marks, and brackets omitted).

Here, the Commission found that the last act making the employment arrangement between Plaintiff and TWC "a binding obligation" was Plaintiff's agreement during his telephone conversation with Baird to work on the Florida Project for TWC. Because Plaintiff was physically present in North Carolina during this conversation, the contract of employment was made in North Carolina.

"To be entitled to maintain a proceeding for workers' compensation, the claimant must be, in fact and in law, an employee of the party from whom compensation is claimed." *Youngblood v. N. State Ford Truck Sales*, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988) (citations omitted). If no employer-employee relationship exists, the Commission lacks jurisdiction to hear the claim. *See Lucas v. Li'l Gen. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976) (citations omitted). "The issue of whether the employer-employee relationship exists is a jurisdictional one." *Youngblood*, 321 N.C. at 383, 364 S.E.2d at 437.

Here, the parties do not contest the Commission's finding that an employer-employee relationship existed between Plaintiff and TWC at the time of the 26 September 2010 accident. The record establishes that — as the Commission found — TWC was a "special employer," Plaintiff was a "borrowed employee," and Coastal remained Plaintiff's "general employer."

"The North Carolina Supreme Court has determined that the Industrial Commission has jurisdiction to . . . hear and determine questions of fact and law respecting the existence of insurance coverage and liability of the insurance carrier." *Smith v. First Choice Servs.*, 158 N.C. App. 244, 248, 580 S.E.2d 743, 747 (2003) (citation and quotation marks omitted); *see also Harrison v. Tobacco Transp., Inc.*, 139 N.C. App. 561, 564-65, 533 S.E.2d 871, 873-74 (2000) (determining that Industrial Commission had jurisdiction to determine whether Kentucky's workers' compensation statutes expanded insurance policy's coverage so as to provide benefits to employee of Kentucky employer).

Having determined that the Commission had jurisdiction to hear this matter, we next turn to Key Risk's argument that its policy does not provide coverage for Plaintiff's injuries. Specifically, Key Risk argues that (1) Plaintiff was not "principally employed" in South Carolina, and therefore, no coverage for his injuries exists under the terms of the policy it issued to TWC; and (2) South Carolina's Workers' Compensation Act does not require that such coverage be provided under Key Risk's policy.

The Information Page of Key Risk's policy states, in pertinent part, as follows:

> 3.A. Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here:
>
> SC

. . . .

C. Other States Insurance: Part Three of the policy applies
to the states, if any, listed here:

[none listed]

The policy also contained a Residual Market Limited Other States Insurance

Endorsement (the "Endorsement"), the relevant language of which provides as

follows:

"Part Three-Other States Insurance" of the policy is
replaced by the following:

PART THREE OTHER STATE INSURANCE

A. How This Insurance Applies:

1. We will pay promptly when due the benefits required of
you by the workers' compensation law of any state not
listed in Item 3.A. of the Information Page if all of the
following conditions are met:

a. The employee claiming benefits was either hired under
a contract of employment made in a state listed in Item 3.A.
of the Information Page *or was, at the time of injury,
principally employed in a state listed in Item 3.A. of the
Information Page*[.]

. . . .

IMPORTANT NOTICE!

If you hire any employees outside those states listed in
Item 3.A. on the Information Page or begin operations in
any such state, you should do whatever may be required
under that state's law, as this endorsement does not satisfy
the requirements of that state's workers' compensation

law.

(Emphasis added.)

Thus, when the Endorsement is read in conjunction with Item 3.A. of the Information Page, the policy provides that Key Risk will pay benefits required by the workers' compensation law of a state other than South Carolina *only if* the employee claiming benefits was either (1) hired under a contract of employment made in South Carolina; or (2) principally employed in South Carolina at the time of injury. Neither party contends that Plaintiff was hired under a contract of employment made in South Carolina. However, the parties disagree as to whether Plaintiff was "principally employed" in South Carolina at the time of his injury.

Key Risk contends that Plaintiff was principally employed in Florida — rather than South Carolina — because his work on the project took place exclusively in Florida. Coastal, conversely, contends that South Carolina was the state in which Plaintiff was principally employed because TWC was based in South Carolina and exercised control from South Carolina over the Florida Project.

"With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Harrison*, 139 N.C. App. at 565, 533 S.E.2d at 874 (citation and quotation marks omitted). Here, Baird, a resident of South Carolina, sought workers' compensation coverage for TWC,

a South Carolina business, through an agent in South Carolina. He received coverage through a policy issued by Key Risk, and the policy was delivered to him at his South Carolina address. Thus, the last act to make a binding insurance contract between Key Risk and TWC occurred in South Carolina. As such, the Commission correctly determined that South Carolina's substantive law governs the interpretation of Key Risk's policy.

Under South Carolina law,

> [i]nsurance policies are subject to the general rules of contract construction. This Court must give policy language its plain, ordinary, and popular meaning. When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used.

*B.L.G. Enters. v. First Fin. Ins. Co.*, 334 S.C. 529, 535, 514 S.E.2d 327, 330 (1999) (internal citations omitted).

In the present case, the Commission held — and the parties agree — that the term "principally employed" in the Endorsement cannot be read in isolation but instead must be construed in conjunction with South Carolina's Workers' Compensation Act. *See* S.C. Code Ann. § 42-5-60 (2015) ("Every policy for the insurance of the compensation provided in this title or against liability therefor shall be deemed to be made subject to provisions of this title. No corporation, association, or organization shall enter into any such policy of insurance unless its form shall have been approved by the Director of the Department of Insurance.").

Coastal argues that § 42-15-10 of South Carolina's Workers' Compensation Act "extended jurisdiction over South Carolina employers beyond state lines by specifically authorizing employees to assert claims against employers domiciled in South Carolina in any state where the employee was hired, injured or his employment was located." Even assuming *arguendo* that this is correct, however, we conclude that the Commission erred in determining that Key Risk's policy provided coverage for Plaintiff's accident.

S.C. Code Ann. § 42-15-10 states as follows:

> Any employee covered by the provisions of this title is authorized to file his claim under the laws of the state where he is hired, the state where he is injured, or the state *where his employment is located*. If an employee shall receive compensation or damages under the laws of any other state, nothing contained in this section shall be construed to permit a total compensation for the same injury greater than that provided in this title.

S.C. Code Ann. § 42-15-10 (2015) (emphasis added).

Based on this statute, Coastal contends that the phrase "principally employed" as used in Key Risk's policy must be interpreted as having the same meaning as the phrase "where . . . employment is located" as contained in the statute. For this reason, Coastal asserts that it is appropriate to examine South Carolina caselaw interpreting this language in § 42-15-10.

In determining where a worker's employment is located for purposes of § 42-15-10, South Carolina courts apply the "base of operation" rule, a doctrine originating

from the decision by the South Carolina Court of Appeals in *Holman v. Bulldog Trucking Co.*, 311 S.C. 341, 428 S.E.2d 889 (Ct. App. 1993). Under this rule, "the worker's employment is located at the employer's place of business to which he reports, from which he receives his work assignments and from which he starts his road trips, regardless of where the work is performed." *Id.* at 346, 428 S.E.2d at 892. South Carolina's appellate courts have made clear that "the location of employment can only be in one state." *Voss v. Ramco, Inc.*, 325 S.C. 560, 572, 482 S.E.2d 582, 588 (Ct. App. 1997).

In the present case, the Commission made the following finding of fact, which Key Risk challenges in this appeal:

> 62. Based upon a preponderance of the evidence of record, the Full Commission finds that Plaintiff's employment was located in South Carolina because it is the only state in which he had any "base of operation." The only place of business ever maintained by TWC was located in Myrtle Beach, South Carolina. Plaintiff was hired from TWC's office in Myrtle Beach, South Carolina. Mr. Baird provided work assignments to the employees, including Plaintiff, working on the Winter Park project from his place of business in South Carolina and Plaintiff was paid out of South Carolina for the work he performed in Florida. The other three lent employees from Coastal -- Michael Porter, Anthony Brown and Randy Wallace -- traveled to Myrtle Beach, South Carolina to receive payment from TWC for the work they performed (along with Plaintiff) in Stuart, Florida upon completion of the job.

The Commission then purported to apply the principles set forth in *Holman* and *Voss* as well as in two other South Carolina cases — *Oxendine v. Davis*, 373 S.C.

438, 646 S.E.2d 143 (2007), and *Hill v. Eagle Motor Lines*, 373 S.C. 422, 645 S.E.2d 424 (2007). Because of the significant amount of attention that the Commission and the parties give these four cases, we address each of them in turn.

In *Holman*, the employee, a truck driver, lived in South Carolina, but he would report to Georgia for his assignments. *Holman*, 311 S.C. at 343, 428 S.E.2d at 891. While driving his truck in Georgia, the employee was killed in an accident on the highway. The employee's mother filed for benefits under South Carolina's Workers' Compensation Act. Her claim was denied, and she appealed the decision to the South Carolina Court of Appeals. *Id.* at 344, 428 S.E.2d at 891.

The court held that in order to determine whether the truck driver's employment was located in South Carolina for purposes of § 42-15-10, an application of the "base of operation" test was required. *Id.* at 346, 428 S.E.2d at 892. In applying this test, the court relied on the fact that although the employee lived in South Carolina, he had reported to Georgia for duty, picked up and returned his company truck in Georgia, received his work assignments from Georgia, and made calls to his employer in Georgia. Therefore, the court concluded that his "base of operation" was in Georgia, meaning that his "employment was located" in Georgia for purposes of § 42-15-10 such that his workers' compensation claim had been correctly denied. *Id.* at 346-47, 428 S.E.2d at 893.

In *Voss*, the South Carolina Court of Appeals revisited this issue. In that case, a company called Ramco, Inc. that manufactured small industrial equipment was located in South Carolina. *Voss*, 325 S.C. at 563, 482 S.E.2d at 583. Another company, NATCO, which sold Ramco's equipment, was also located in South Carolina. *Id.* NATCO's owner hired the plaintiff — who lived in Texas — to sell Ramco's equipment across the country. The plaintiff would travel from city to city selling Ramco equipment by the truckload. *Id.* at 563, 482 S.E.2d at 583-84. The agreement between Ramco and NATCO provided that Ramco would deliver its equipment to the city in which the group of salesmen — including the plaintiff — were selling the equipment, and NATCO's owner would then supervise the sales team in each city to which the team traveled. *Id.*

The plaintiff was injured selling Ramco equipment while in the state of Washington. *Id.* at 570, 482 S.E.2d at 587. During the time in which he worked for Ramco, he never sold equipment in South Carolina and made only one trip to South Carolina to pick up equipment. *Id.* at 565, 482 S.E.2d at 584. He filed a workers' compensation claim in South Carolina, but Ramco denied the claim, asserting that the South Carolina Workers' Compensation Commission lacked subject matter jurisdiction over the plaintiff's claim. *Id.* at 563, 482 S.E.2d at 583. The commission ruled in favor of the plaintiff, and its decision was ultimately affirmed by the circuit court. Ramco appealed to the South Carolina Court of Appeals. *Id.*

The court invoked the "base of operation" test set out in *Holman* to determine whether South Carolina had jurisdiction over the plaintiff's claim, noting that "all types of transient employment . . . do not fit neatly within the employment ritual of the employee truck driver in [*Holman*]." *Id.* at 571, 482 S.E.2d at 588. The court observed that a traveling salesman would not have the same work routine as a truck driver, stating the following:

> [I]t was not this Court's intention [in *Holman*] to hold that a class of transient employees could never have a "base of operation" and therefore be limited under section 42-15-10 to the benefits available in two states (the state where the employee [was] hired and the state where the employee was injured), while other transient employees could choose the most advantageous of three states.

*Id.*

The court reiterated its previous statement in *Holman* that "the location of employment can only be in one state" and that, logically, "the location of employment must be in *some* state." *Id.* at 572, 482 S.E.2d at 588. The court proceeded to hold that although the plaintiff lived in Texas and was injured in Washington, his employment was located in South Carolina. *Id.* The court ruled that regardless of the fact that the plaintiff received work assignments from a supervisor who was often physically present in multiple states, the plaintiff's employer was Ramco, and Ramco was permanently located in South Carolina. *Id.*

The court reasoned that

> although Voss started his road trips from wherever the group was located, but never from South Carolina, he nevertheless is principally employed in South Carolina because it is the only state in which he has any "base of operation." . . . [A]s a practical matter, South Carolina is the state where Voss was employed, given the amount of control exerted over Voss by [his employers], both of whom operated out of South Carolina.

*Id.*

In 2007, the Supreme Court of South Carolina issued two decisions applying the "base of operation" test. In *Oxendine*, the plaintiff was a construction worker living in North Carolina who did seasonal work for a construction company that was based in South Carolina. *Oxendine*, 373 S.C. at 440, 646 S.E.2d at 144. His employer hired him to work at a jobsite in North Carolina on a project that lasted for six weeks. The plaintiff had previously performed work for the employer in South Carolina and had regularly traveled to South Carolina to receive his payment. *Id.*

During the six-week period prior to his injury, the plaintiff worked solely at the jobsite in North Carolina. *Id.* At one point, the plaintiff visited his employer's home in South Carolina for social purposes and fixed the employer's water pump — a task for which he was not paid. *Id.* He also traveled to the employer's home in South Carolina to receive payment at least once during the time he worked on the North Carolina project. *Id.*

The plaintiff was injured in an accident while working on the North Carolina jobsite. *Id.* He filed a workers' compensation claim in North Carolina, which was

denied. *Id.* He then filed a claim under South Carolina's Workers' Compensation Act, and the South Carolina Workers' Compensation Commission determined that it had jurisdiction over the plaintiff's claim. *Id.* at 440-41, 646 S.E.2d at 144. The employer ultimately appealed to the Supreme Court of South Carolina. *Id.*

The court held that South Carolina was the plaintiff's "base of operation." *Id.* at 445, 646 S.E.2d at 146. In making this determination, the court relied on multiple factors, noting that while none was "individually determinative, they all lend support to the conclusion[.]" *Id.* at 444, 646 S.E.2d at 146.

> (1) Respondent regularly worked for Employer in South Carolina during warm months for a number of years; (2) Respondent went to Employer's home/office in South Carolina on occasions to be paid, including at least once during the last interval of his work; (3) Respondent often met co-workers at the place of employment to go to jobs; and (4) Respondent performed work at Employer's home immediately before his injury.

*Id.*

The court then stated the following:

> In reaching this conclusion, we look not only at Respondent's six-week employment term, but also at his broad employment history with Employer. Respondent's regular and recurring employment with Employer for several years prior to his injury was nearly entirely based in South Carolina. The fact that Respondent was working in North Carolina on this particular occasion does not transport the Employer's base of operations from South Carolina to North Carolina.

*Id.*

The court further noted that "[t]his conclusion is underscored by the amount of control exerted over Respondent by Employer who was located in South Carolina." *Id.* In explaining its ruling, the court clarified the principles it drew from *Holman* and *Voss*:

> Appellants also argue that if the base of operations rule applies, the relevant base of operation was North Carolina because it is the employee's base, and not the employer's base, that should be considered. Appellants' reasoning directly contradicts both *Voss* and *Holman*[,] cases which apply the base of operations rule to determine the location of nomadic employment based on the employer's place of business, "regardless of where work is performed."

*Id.* at 445, 646 S.E.2d at 146.

*Hill* concerned a plaintiff truck driver who lived in South Carolina and was injured while driving through Virginia. *Hill*, 373 S.C. at 427, 645 S.E.2d at 426. The plaintiff's employer was based in Alabama. After his accident, the plaintiff successfully filed a claim under South Carolina's Workers' Compensation Act. His employer appealed the decision in favor of the plaintiff to the Supreme Court of South Carolina. *Id.* at 427-28, 645 S.E.2d at 426.

Because the plaintiff had been hired in South Carolina, the court held that South Carolina had jurisdiction over the plaintiff's claim. *Id.* at 430, 645 S.E.2d at 428. However, the court also ruled that in addition to being the state where the plaintiff was hired, South Carolina was likewise the state where plaintiff's employment was "located" for purposes of § 42-15-10. The court determined that the

plaintiff's "base of operation" was in South Carolina because the plaintiff began his road trips from South Carolina, kept his truck at his South Carolina home on the weekends, and received his paycheck at his home in South Carolina. *Id.* at 432-33, 645 S.E.2d at 429. The court further noted that although the plaintiff called the Alabama office at the end of each delivery to find out where to pick up his next load, he was not required to report to the Alabama office for duty or return to Alabama after completing his assignments. *Id.* at 432, 645 S.E.2d at 429. Nor was the plaintiff's truck licensed in Alabama. *Id.*

*Holman*, *Voss*, *Oxendine*, and *Hill* demonstrate the fact-specific nature of the "base of operation" test's application and the difficulty of determining where a worker's employment is "located" when his employment is nomadic in nature. In such cases, the employee works on multiple jobs for a particular employer in more than one state, making it difficult to pinpoint one specific state as the location of his employment.

In the present case, conversely, Plaintiff's employment was not nomadic. He worked *at one location* for his employer during the entire period of his employment. He had no prior history of working on jobs — in South Carolina, Florida, or anywhere else — for TWC, and the record is devoid of any indication that he was likely to work on future projects for TWC. He was not a traveling salesman or a truck driver whose job duties for his employer required him to travel to multiple states. Nor was he akin

to the worker in *Oxendine* who performed multiple jobs for his employer in one state prior to being dispatched by the employer to perform a job in another state.

Instead, Plaintiff was a lent employee who was hired by TWC to perform one specific job in one specific place. TWC required that he perform all of his work in Florida, and he lived in Florida for the entire duration of the job, commuting from a motel in Florida to the Florida jobsite throughout the duration of his employment with TWC. Plaintiff reported to work each day in Florida and received assignments from on-site supervisors in Florida.

Standing in stark contrast to his numerous connections with Florida during his employment with TWC is the utter lack of contacts Plaintiff had with South Carolina. Plaintiff never reported to South Carolina for duty either before the project began or after it was completed. Indeed, the record is devoid of any indication that Plaintiff visited South Carolina for *any* purpose — except when he drove through that state as a matter of geographical necessity between North Carolina and Florida.

For these reasons, the present case requires nothing more than a commonsense application of the "base of operation" test to conclude that Plaintiff's employment with TWC was "located" in Florida. The courts in *Holman*, *Voss*, *Oxendine*, and *Hill* were required to balance competing factors in applying this test given that each of those cases involved employees who performed work for a single employer in multiple states. The facts of this case simply do not require us to do so here.

We are unpersuaded by Coastal's argument that Plaintiff's job assignments actually came from Baird in South Carolina. The record shows only two instances of direct contact between Baird and Plaintiff — the telephone call during which Baird offered him the job and a subsequent call in which he gave Plaintiff a "pep talk." Both of these telephone calls occurred while Plaintiff was still in North Carolina and before he had left the state to start work on the Florida Project.

Plaintiff had on-site supervisors at the Florida jobsite — initially Porter and later Fleener — who gave him his work assignments and instructions for the work to be performed. The record clearly indicates that these supervisors were both in Florida when they instructed Plaintiff as to his duties on the Florida Project. While Coastal argues that these on-site supervisors were relaying orders that had been given to them by Baird from South Carolina, we do not believe that any such indirect control over Plaintiff's work by Baird serves as a sufficient substitute for direct connections between Plaintiff and South Carolina given the circumstances of Plaintiff's employment with TWC.

Therefore, we conclude that throughout Plaintiff's employment with TWC, his "base of operation" was Florida. Accordingly, he was neither "principally employed" (for purposes of the Endorsement) in South Carolina nor was South Carolina the state "where his employment [was] located" (for purposes of § 42-15-10). Thus, the

Commission erred in determining that Key Risk's policy provided coverage for Plaintiff's workplace accident.[2]

## Conclusion

For the reasons stated above, we reverse the Commission's Opinion and Award to the extent it determined that Key Risk's policy provides any coverage for the 26 September 2010 accident and remand this matter for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges INMAN and ENOCHS concur.

---

[2] On appeal, Key Risk also raises as an alternative argument that the Commission erred in ordering Key Risk to pay *all* indemnity benefits owed on Plaintiff's claim as a result of his injury based on the theory that "the proportion of the responsibility of [Plaintiff's] wages [was] equal between Coastal and [TWC]." However, in light of our holding that Key Risk's policy does not provide any coverage regarding Plaintiff's accident, we need not address this issue.